Donald HEDRICK and Russell Murphy,
Appellants (Defendants Below),

v.

FIRST NATIONAL BANK AND TRUST
COMPANY OF PLAINFIELD, Indiana,
Appellee (Plaintiff Below).

No. 1–285A27.

Court of Appeals of Indiana,
First District.

Sept. 16, 1985.

John R. Price, Burroughs & Price, Indianapolis, Thomas, Thomas & Pease, Brazil, for appellants.

Sorelle J. Ancel, Ancel, Dunlap & Traylor, Indianapolis, Craig & Craig, Brazil, for appellee.

ROBERTSON, Judge.

Donald Hedrick (Hedrick) and Russell Murphy (Murphy), defendants below, appeal from a judgment finding them liable to First National Bank of Plainfield (Bank), plaintiff below, on their personal guaranties of a note executed by Brown County Ski Mountain Resort, Inc. (Brown County) and Starlite Recreation Industries, Inc. (Starlite).

We affirm.

The facts favorable to the judgment reveal that Hedrick and Murphy were officers of Brown County and Starlite. On December 18, 1980, Hedrick and Murphy executed to Bank an "Unconditional Guaranty", constituting a continuing and unconditional guaranty for the payment of all obligations of the above corporations to Bank, their liability not to exceed $138,600 for each guarantor.

Hedrick and Murphy gave their personal guaranties in order to induce Bank to lend the corporations $990,000 as evidenced by a note calling for quarterly payments of principal and interest at the fixed annual rate of 15% beginning on March 18, 1981. In addition, the corporate makers promised to pay 18% interest per annum on all monies not paid when due. In addition to the guaranties of Hedrick and Murphy, the loan was secured by a real estate mortgage on land owned by the corporations and subject to a first mortgage in favor of Allied Fidelity Insurance Corporation (Allied). In addition to the real estate mortgage, the loan was secured by two Security Agreements on personal property, one executed by Starlite, and one executed by Brown County.

Starlite and Brown County defaulted on the note when they failed to make the payment due on December 18, 1981. The corporate makers have not paid any portion of the principal or interest subsequent to that date, leaving a balance of $1,465,000.

In February, 1982, Brown County and Starlite became subject to a Chapter 11 bankruptcy. During those proceedings, the bankruptcy court granted Allied a super-priority lien in the amount of $500,000 to secure advances to Brown County and Starlite to operate the ski facility during 1982.

The Bank then brought this action to recover from Hedrick and Murphy on their guaranty agreements, testifying at trial that the value of the collateral to secure the loan had diminished to nothing as a result of the actions taken in the bankruptcy court. The trial judge entered his Findings of Fact and found in favor of the Bank against Hedrick and Murphy in the amount of $138,600 each plus costs and interest at 18% per annum from September 18, 1981. Hedrick and Murphy then perfected this appeal, raising three issues, which we consolidate and restate as:

I. Whether Hedrick and Murphy are entitled to pro tanto release from any liability on their personal guaranties where Hedrick and Murphy allege that the Bank unjustifiably impaired the collateral securing the loan.

II. Whether the trial court erred in awarding the Bank interest calculated at 18% from September 18, 1981, a period three months before default.

III. Whether the trial court erred in awarding the Bank pre-judgment interest, and alternatively, whether it was error to calculate pre-judgment interest at 18% rather than at the statutory rate of 8%.

ISSUE ONE:

Hedrick and Murphy urge us to reverse the trial court's finding that they are liable to the Bank on their guaranties of the loan because Hedrick and Murphy, as sureties, are entitled to pro tanto release from their agreements where the holder of the note has impaired the collateral securing the note.

Before proceeding to answer Hedrick and Murphy's arguments, we observe that they have not waived this issue by failure to properly plead their affirmative defense number 12, as Bank contends. Paraphrased, affirmative defense 12 alleges that the Bank failed to adequately protect the collateral securing the note, and that consequently Hedrick and Murphy should be discharged from liability.

A reading of the record discloses that the trial court granted Hedrick and Murphy's motion for leave to file an amended answer which includes affirmative defense 12. The court then noted for the record that amended affirmative defense 12 was filed. Apparently through an oversight, no pleading entitled "Amended Answer and Affirmative Defense" is part of the record as it appears before us now (although it is listed in the Table of Contents). However, we conclude that the parties have complied with the rule on amending pleadings, Trial Rule 15, Ind.Rules of Procedure.

■ This court will construe the guaranties in this case so as to give effect to the intention of the parties. *Loudermilk v. Casey*, (1982) Ind.App., 441 N.E.2d 1379. We ascertain the intent of the parties from the clear, unambiguous language of the agreement. *Id.* Interpretation of the guaranty is governed by the same rules of construction applicable to any contract. *Id.; Orange-Co., Inc. v. Brown*, (1979) 181 Ind.App. 536, 393 N.E.2d 192.

■ Hedrick and Murphy do not argue that the language of the guaranty agreement is susceptible of several interpretations, and we find nothing ambiguous in the pertinent language which appears in the guaranty agreement:

The obligation of the undersigned hereunder shall not be released, discharged, or in any way affected, nor shall the undersigned have any rights or recourse against Bank by reason of any action Bank may take or omit to take under the foregoing powers.

According to the guaranty, Hedrick and Murphy granted to the Bank various powers with respect to the collateral, including the power to substitute, exchange, or release the collateral.

In *Carney v. Central National Bank of Greencastle*, (1983) Ind.App., 450 N.E.2d 1034, this court held that a guarantor will be bound by his prior consent to an extension of time for payment and release of the collateral. In *Carney*, the guarantor executed a guaranty in which he consented:

... to any change, release or surrender of securities for said indebtedness and that said indebtedness may be compromised or renewed or extended from time to time at an increased rate of interest without notice to me, and I hereby waive all rights to any property mortgaged or otherwise pledged under the instruments of indebtedness described herein ...

*Id.* at 1035.

Prior consent operates as a waiver of the consenting party's right to claim his own discharge. *Id.* at 1037; Official Comment 2 IND.CODE 26–1–3–606. *See Skrypek v. St. Joseph Valley Bank*, (1984) Ind.App., 469 N.E.2d 774. Courts in other jurisdictions have refused to discharge a guarantor where the guaranty agreement expressly provided that the guarantor's liability would not be affected by any action or inaction of the holder of the collateral with respect to any collateral securing the loan.

*Ishak v. Elgin National Bank,* (1977) 48 Ill.App.3d 614, 6 Ill.Dec. 630, 363 N.E.2d 159; *United States v. Bertie,* (1976) 529 F.2d 506 (9th Cir.1976).

Accordingly, we decline to discharge or release Hedrick and Murphy from any liability which they agreed to undertake in the guaranty agreement.

Even without a waiver of discharge, Hedrick and Murphy have not shown that the Bank unjustifiably impaired the collateral. Hedrick and Murphy point to evidence that the value of the collateral diminished to nothing from an appraised value of about $2,000,000 at the time that the collateral was pledged as security for the loan. The record further discloses that the Bank's interest in the real property pledged as collateral was subject to a first mortgage in the amount of $425,000. In addition, during the pendency of the bankruptcy proceedings, Allied Fidelity was given a lien of $500,000 on the real property and placed ahead of the Bank. There was no evidence to indicate that the Bank was responsible for any circumstance which placed Bank behind lienholders holding liens totalling $925,000. Finally, although the Bank entertained an offer by Allied Bonding to purchase the collateral for $350,000, but rejected it, there was evidence that sale of the collateral to Allied would not have satisfied the outstanding debt owed the Bank, and that at least $277,200 (the total sum guaranteed) would remain to be satisfied. Therefore, Hedrick and Murphy should not be discharged from liability on the basis of the Bank's actions concerning the collateral.

ISSUES II AND III:

Hedrick and Murphy contend that it was error for the trial judge to assess interest at the rate of 18% per annum from September 18, 1981, until the date of the judgment. Specifically, they argue first that the court was incorrect when it calculated interest three months prior to default, which occurred on December 18, 1981. Next, they state that the Bank is not entitled to pre-judgment interest at all, and, in the alternative, that pre-judgment interest

should be assessed at the statutory rate of 8% provided at IND.CODE 24-4.6-1-103.

■ The court must affirm the trial court's judgment if it can be sustained on any theory or basis found in the record. *In re Marriage of Moser,* (1984) Ind.App., 469 N.E.2d 762.

■ Preliminarily, we note that Hedrick and Murphy's argument that the judgment should be subject to the statutory rate of 8% is unavailing. The promissory note provides for repayment of principal and interest at an annual rate of 15%. It further provides that Makers are to pay interest at the annual rate of 18% on all monies not paid when due. In the guaranty, Hedrick and Murphy agreed to the following:

> ... the undersigned hereby guarantee the full and prompt payment, when due ... together with interest and all costs, expenses, and attorneys' fees, of any and all notes, bills, drafts, commercial paper and other obligations of the Debtor ...

Furthermore, the guaranties bear the following notation:

> This Guaranty is soley (sic) involved with the note dated Dec. 18, 1980, and does not affect any other guaranty delivered to First National Bank and Trust Co. of Plainfield, Ind. No other guaranty refers to the note dated Dec. 18, 1980, that is signed by the above.

The guaranties are also dated December 18, 1980, and it is undisputed that the note and guaranties were executed as part of the same transaction.

We rely upon the holding in *Loudermilk v. Casey, supra* for support of our determination that the guaranties and note constitute a single contract and should be read together. *Id.* As in *Loudermilk,* the guaranties refer to the note which was executed on the same date as part of the same transaction. The trial court could reasonably have found that the terms of the note concerning interest chargeable upon default of the corporate makers could fairly be construed to apply to the guarantors. Therefore, IND.CODE 24-4.6-1-103 is inapplicable here, where the pre-judg-

ment interest rate is established by agreement of the parties. *Monroe County Community School Corporation v. Frohliger,* (1982) Ind.App., 434 N.E.2d 93 (prejudgment interest allowable at statutory rate in absence of contractual provision specifying the interest rate).

 Moreover, we cannot say that the judgment of the trial court was clearly erroneous where interest at 18% was calculated from September 18, 1981, the first month of the quarter in which Brown County and Starlite defaulted on the loan.

Judgment affirmed.

RATLIFF, P.J., and NEAL, J., concur.