Shashi **AHUJA**, M.D., Appellant–
Defendant,

v.

**LYNCO LTD. MEDICAL RESEARCH,**
Appellee–Plaintiff.

No. 02A03–9512–CV–421.

Court of Appeals of Indiana.

Nov. 19, 1996.

Transfer Denied April 29, 1997.

Patrick J. Arata, Beth A. Webber, Arata & Pappas, Fort Wayne, for Appellant–Defendant.

Ward W. Miller, Bloom, Bloom, More & Miller, Fort Wayne, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Shashi Ahuja ("Ahuja") appeals a judgment in favor of Lynco Ltd. Medical Search ("Lynco") for $20,000. Ahuja presents several issues for our review which we consolidate and restate as follows:

I.  Whether the contract is void because Lynco was not licensed to operate as an employment agency in Indiana.

II.  Whether the trial court erred in finding that a contract existed between Lynco and Ahuja.

III.  Whether the evidence was sufficient to support the award of damages to Lynco.

We affirm.

The facts most favorable to the judgment reveal that Ahuja was interested in hiring an associate cardiologist. He mailed solicitation letters to a large number of medical schools. He also received a telephone call from a representative of Lynco, which was an employment agency specializing in placement of medical professionals. Over the course of several months during late 1992, Lynco provided Ahuja with the names of several candidates, including Deepak Shah ("Shah"). Lynco also provided Shah with Ahuja's name and telephone number. A few days later Shah noticed Ahuja's solicitation letter posted on the bulletin board at his medical school.

In November 1992, Lynco sent Ahuja a form agreement for their services. The contract provided that if Ahuja hired a person referred to him by Lynco, he would pay Lynco $20,000 for their services. Ahuja never executed the contract nor returned it to Lynco. Without notifying Lynco, Ahuja arranged for Shah to travel to Fort Wayne for an interview. Lynco continued to communicate with Ahuja concerning Shah's interest in the position and their fee. They also asked Ahuja to return the executed contract several times.

Ahuja offered the associate position to Shah and Shah accepted. His starting salary was $160,000. When Ahuja refused to pay Lynco for its services, Lynco filed this lawsuit. After a bench trial, the trial court entered findings of facts and conclusions of law concluding that a contract existed between the parties. The trial court entered judgment in favor of Lynco for $20,000. This appeal ensued.

### I.

### *Contract*

Ahuja first argues that the trial court erred in determining that a contract existed between Lynco and him because Lynco was not licensed to operate an employment agency in Indiana. We note at the outset that the trial court entered findings of fact and conclusions of law. When a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this Court must determine whether the trial court's findings are sufficient to support the

judgment. *Vanderburgh Co. Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct. App.1991), *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ Here, the record does not reflect a request for such findings by either party. Instead the trial court entered the specific findings of fact and conclusions *sua sponte.* However, the same standard of review applies when the trial court gratuitously enters specific findings of fact and conclusions, with one notable exception. When the trial court enters such findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis*, 575 N.E.2d 650, 652 (Ind.Ct.App.1991). We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

■ Both Ahuja and Lynco devote a substantial portion of their briefs to arguing whether Lynco's business is governed by IND.CODE § 25–16–1–1 *et seq.* which controls the licensing of employment agencies in Indiana.[1] Ahuja contends that because Lynco failed to comply with the statute, they are prohibited from enforcing any contracts they make in Indiana. In its findings of fact and conclusions of law, the trial court determined that Ahuja was not entitled to the benefits of the statute because it was enacted to protect job applicants rather than employers. Regardless of whether the trial court's conclusion is correct, the determination of who is permitted to claim the benefits of the statute is unnecessary. To the extent that a judgment may be based on superfluous findings and conclusions which are not fatal to the judgment, those findings and conclusions will not warrant reversal even if they are erroneous. *Lever Brothers Co. v. Langdoc*, 655 N.E.2d 577, 583 (Ind.Ct.App.1995).

■ The determination of whether Lynco is governed by IC 25–16–1 *et seq.* is irrelevant because even if Lynco did violate the statute, that violation does not void the contract. There is a strong presumption of the validity of contracts. *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129–30 (Ind.1995). However, courts have refused to enforce contracts on public policy grounds in three types of situations: (1) agreements that contravene a statute, (2) agreements that clearly tend to injure the public in some way, and (3) agreements that are otherwise contrary to the declared public policy of Indiana. *Id.* at 1130.

The question here is whether the contract between Ahuja and Lynco contravenes the licensing statute. To determine whether a contract actually contravenes a statute, the language of the statute must be reviewed. *Continental Basketball Association, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 140 (Ind.1996). Unless the language of the statute clearly and unambiguously states that the legislature intended that the courts be unavailable for enforcement of contracts made in violation of it, a contract will not be found to contravene a statute. *Id.* Language which will clearly show such legislative intent includes words such as "void" and "unenforceable." *Id.*

---

1. Ahuja also argues on appeal that Lynco was not entitled to collect a fee because Shah resided in New Jersey when the events at issue in this case occurred and Lynco was not licensed to operate an employment agency in New Jersey. However, this theory was not presented to the trial court. Thus, it is waived for purposes of this appeal. *See Franklin Bank & Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind.1990) (party cannot change its theory and on appeal argue an issue which was not presented to the trial court).

If clear and unambiguous language is not present in the statute, the court must engage in a balancing test to determine whether a particular contract should be enforced under the statute. *Id.* The considerations to be balanced are (1) the nature of the subject matter of the contract, (2) the strength of the public policy underlying the statute, (3) the likelihood that refusal to enforce the bargain or term will further that policy, (4) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain, and (5) the parties' relative bargaining power and freedom to contract. *Id.* (citing *Fresh Cut, supra* ).

The statute governing employment agencies does not use terms such as "void" or "unenforceable." Rather, it prohibits unlicensed employment agencies from engaging in business in Indiana. IND.CODE § 25–16–1–1 (1993). In the event of a violation, the statute authorizes the Department of State Revenue to investigate and institute criminal or civil proceedings. IND.CODE § 25–16–1–17 (1993) and IND.CODE § 25–16–1–18 (1993). Due to the failure of the legislature to use language indicating its intent to make the courts unavailable to persons who violate the statute and its inclusion of remedial provisions, we conclude that the legislature did not intend all contracts made in violation of the statute to be void. *See Continental Basketball, supra.*

We must then apply the balancing approach utilized in *Fresh Cut.* Here, we find no compelling reasons to declare the contract void. A review of the statute shows that its purpose was to protect job applicants, rather than employers, from unscrupulous employment agencies. *See, e.g.,* IND.CODE § 25–16–1–12 (1993) (requiring that agency notify applicant if strike or lock-out is occurring at company prior to referral); IND.CODE § 25–16–1–13 (1993) (prohibiting agency from sharing fees received from applicants with employers); IND.CODE § 25–16–1–14 (1993) (prohibiting referral to places of "bad repute"); IND.CODE § 25–16–1–15 (1993) (requiring refund of fee in the event of referral to non-existent job opening). This public policy would not be furthered by refusing to enforce the contract between Ahuja and Lynco. In addition, by failing to enforce the contract, we would be penalizing Lynco while rewarding Ahuja who would receive the benefits of Lynco's services without paying for them. Such a forfeiture is undeserved when it was Ahuja who attempted to circumvent the contract by working directly with Shah after obtaining his name from Lynco. Finally, there is nothing inherent in the subject matter of the contract which suggests that it should not be enforced. Accordingly, we conclude that the contract between Lynco and Ahuja is not void as against public policy.

## II.

### *Existence of Contract*

Ahuja next contends that the trial court erred in determining that a contract existed between the parties. When the evidence is conflicting, the existence of a contract is a factual determination. *City of Indianapolis v. Twin Lakes,* 568 N.E.2d 1073, 1078 (Ind.Ct.App.1991), *reh. denied, trans. denied.* Ahuja argues that the evidence was not sufficient to show a meeting of the minds to support the finding that a contract was formed.[2] Our test for sufficiency of the evi-

2. Ahuja also argues that he received no benefit from Lynco's actions and that he was not unjustly enriched by Lynco's actions. Ahuja confuses the various types of contracts. There are three general types of contracts—express, implied and constructive. *Wagoner v. Joe Mater & Assoc., Inc.,* 461 N.E.2d 706, 708 (Ind.Ct.App.1984). Express and implied contracts are very similar. *Id.* They differ only in that an express contract is evidenced by spoken or written words while an implied contract is evidenced by the conduct of the parties. *Id.* The final type of contract, a constructive contract, is also known as a quasi-contract or a contract implied at law. *Twin Lakes, supra,* at 1078. It is a legal fiction used to refer to a situation where no contract actually exists "but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." *Id.* The issues of unjust enrichment and conferring a benefit arise in the context of a constructive contract. *See Bailey v. Manors Group,* 642 N.E.2d 249, 252–53 (Ind.Ct.App.1994), *trans. denied.* Here, the court did not find that a constructive contract existed. Instead, it determined that Ahuja's conduct indicated an acceptance of Lynco's offer, thereby forming an implied contract between the parties.

Ahuja's confusion is understandable. The trial court determined the damages due to Lynco using the theory of *quantum meruit. Quantum*

dence requires that we neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Bright v. Kuehl,* 650 N.E.2d 311, 315 (Ind.Ct. App.1995), *reh. denied, trans. denied* (citing *Martin v. Roberts,* 464 N.E.2d 896 (Ind. 1984)). To prevail on its claim that an implied contract existed between the parties, Lynco must show that the parties' actions evidenced a mutual agreement and an intent to promise. *McCart v. Chief Executive Officer in Charge, Independent Fed. Credit Union,* 652 N.E.2d 80, 85 (Ind.Ct.App.1995), *reh. denied, trans. denied.* The parties' intent is a factual matter to be determined by the trial court. *Twin Lakes, supra,* at 1079. The parties' intent can be inferred from the surrounding circumstances. *Id.*

The trial court found that Lynco contacted Ahuja with the name of Shah and at least one other potential candidate. In addition, a Lynco representative made several telephone calls to Ahuja concerning Shah and other potential candidates. Lynco also forwarded a form service agreement to Ahuja, but he never executed the contract. Even though Ahuja never signed the written contract, he continued to pursue the candidates submitted to him by Lynco. His conduct constituted an acceptance of Lynco's offer of services. This supports the trial court's conclusion that an implied contract existed between the parties. In his argument, Ahuja directs us to evidence which contradicts the trial court's conclusion. However, this is simply an invitation to reweigh the evidence and judge the credibility of witnesses which we will not do on appeal. *Bright, supra.* Because there is ample evidence to support the trial court's conclusion that the parties' conduct evidenced an agreement between the parties for the employment services rendered, we conclude that the trial court did not err in determining that an implied contract existed between the parties. *Id.*

### III.

#### *Damages Award*

Finally, Ahuja argues that the trial court's award of damages is not supported by the evidence. On appeal, a damage award must be supported by evidence of probative value. *Fowler v. Campbell,* 612 N.E.2d 596, 603 (Ind.Ct.App.1993). It cannot be based on mere speculation or conjecture. *Id.* We will not reverse a damage award if it is within the scope of the evidence before the trial court. *Id.* When reviewing the evidence, we may not reweigh the evidence or judge the credibility of the witnesses. *Id.*

Ahuja contends that Lynco did not present evidence on the value of the services. Therefore, there was no evidence before the trial court to support the award. Once again, Ahuja ignores the evidence favorable to the verdict. Lynco presented evidence concerning the services which it provided to both Shah and Ahuja. Although Lynco may not have provided all of the services it normally provides, such as arranging and paying for Shah's trip to Indiana for the interview, the trial court found that this was due to Ahuja's conscious decision to bypass Lynco. Lynco also presented evidence of its normal fee for its services and the range of fees charged by other employment services. Thus, there was evidence before the trial court concerning the reasonable value of the services rendered by Lynco. Because the damage award of $20,000 is within the scope of the evidence before the trial court, we conclude that it did not err in its award. *Id.*

Affirmed.

HOFFMAN and GARRARD, JJ., concur.

---

*meruit* is a remedy for breach of contract under which an innocent party can recover damages for services rendered under a contract. *Twin Lakes, supra,* at 1078. However, courts have also used the term *quantum meruit* synonymously with the terms constructive contract and quasicontract thus creating confusion among the bar. *Id.*