701 N.E.2d 856 (1998)
AREA PLAN COMMISSION OF EVANSVILLE AND VANDERBURGH COUNTY and the City of Evansville, Appellants-Defendants,
v.
Kevin J. WILSON, Appellee-Plaintiff.
No. 82A01-9712-CV-429.
Court of Appeals of Indiana.
November 12, 1998.
*858 D. Timothy Born, Shawn M. Sullivan, Evansville, for Appellants-Defendants.
Robert R. Faulkner, Evansville, for Appellee-Plaintiff.

*857 OPINION
RATLIFF, Senior Judge.

STATEMENT OF THE CASE
Defendants-Appellants Area Plan Commission of Evansville and Vanderburgh County (the "Plan Commission") and the City of Evansville ("Evansville") appeal the trial court's judgment in favor of Plaintiff-Appellee Kevin J. Wilson ("Wilson").
We reverse and remand.

ISSUES
The Plan Commission raises four issues for our review, which we consolidate and restate as:
1. Whether the trial court erred in finding a portion of Evansville's Zoning Code is in violation of the free exercise clause of the First Amendment to the United States Constitution.
2. Whether the trial court erred in finding that a portion of Evansville's Zoning Code is an unconstitutional prior restraint upon Wilson's exercise of religious speech.
3. Whether the trial court erred in finding that a portion of Evansville's Zoning Code is unconstitutionally discriminatory.

FACTS AND PROCEDURAL HISTORY
Wilson is the owner of Evansville property located in a district zoned for commercial use. On July 28, 1994, Wilson made application to the Evansville Board of Zoning Appeals (the "BZA") to obtain a special use permit to operate a church, consisting of believers of the Christian faith, on his Evansville property. On September 15, 1994, the BZA held a public hearing on Wilson's application for a special use permit and granted the permit for a period of one year from the date of its issuance. This one-year grant for a new applicant was standard practice and was normally followed by a more permanent grant upon a renewed application at the end of the first year.
On August 3, 1995, a Plan Commission staff member notified Wilson by letter that the special use permit would soon expire. Wilson elected not to file an application for a new permit. Instead, he filed a complaint for declaratory judgment alleging that the portion of the Evansville Zoning Code requiring the permit (the "special use ordinance" or the "ordinance") was unconstitutional.
After a hearing, the trial court issued findings of fact, conclusions of law, and a judgment in Wilson's favor. The trial court concluded that the special use ordinance was unconstitutional. The Plan Commission and Evansville now appeal the trial court's judgment.

DISCUSSION AND DECISION

STANDARD OF REVIEW
Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment or decree. Indiana Farmers Mutual Insurance Co. v. Ellison, 679 N.E.2d 1378, 1380 (Ind.Ct.App.1997), trans. denied. The trial court entered findings of fact and conclusions of law when it rendered its judgment. When a party has requested specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind.1998). In addition, before affirming on a legal theory supported by the findings *859 but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings. Id. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. Ahuja v. Lynco Ltd. Medical Research, 675 N.E.2d 704, 707 (Ind.Ct.App.1996), trans. denied. The judgment will be reversed only when clearly erroneous. Id. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. Id. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. Id.
Here, the trial court's declaratory judgment order was accompanied by findings of fact and conclusions of law which the trial court apparently made sua sponte.[1] The same standard of review applies when the trial court gratuitously enters findings of fact and conclusions of law, with one notable exception. Indiana Farmers Mutual Insurance Co., 679 N.E.2d at 1381. When the trial court enters such findings on its own motion, the specific findings control only as to the issues they cover, while the general judgment standard applies to any issue upon which the court has not found. Id.

I. FREE EXERCISE
The First Amendment to the United States Constitution, which has been made applicable to the States by incorporation into the Fourteenth Amendment, provides in pertinent part that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof...." Prior to 1990, the United States Supreme Court held that a government regulation of general applicability which significantly burdened religious beliefs or practices was in violation of the free exercise clause of the First Amendment unless the regulation was justified by a compelling state interest and was the least restrictive means of achieving that interest. See e.g., Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). In 1990, however, the strict scrutiny test requiring a compelling interest and least restrictive means was abandoned by the court in Employment Division, Department of Human Resources v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In Smith, the court held that a government regulation which clearly furthers a secular public purpose does not violate the free exercise clause, though the regulation as applied burdens a religious belief or practice, as long as the regulation is a "valid and neutral law of general applicability." 110 S.Ct at 1600-01. In Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), the court continued to adhere to the test announced in Smith. The court, however, did hold that a regulation burdening religious practice which is not neutral or of general application must advance compelling interests and be tailored narrowly in pursuit of these interests. 113 S.Ct. at 2233.
In the present case, the special use ordinance lists thirty-three "special uses," including colleges and universities; schools; churches and church-operated facilities; charitable and philanthropic institutions; public parks and recreational facilities; and stadiums, auditoriums, and arenas. Zoning Code, § 15.153.08.134. These special uses are designated as such because they "are necessary to the life and economic health of the community, but have characteristics of operation that do not readily permit classification in the usual residential, commercial, or industrial districts." Zoning Code, § 15.153.08.130. A property owner may utilize his property to exercise a special use in a traditional zoning district as long as the property owner secures a special use permit and the special use is permitted in that zoning district. Zoning Code, § 15.153.08.136. A property owner wishing to utilize his property *860 as a school or church is permitted to do so in any residential, commercial, or industrial zoning district. Zoning Code, Table S.U. at page 15-20. In order to obtain a special use permit, any property owner intending to utilize his property for any of the special uses must comply with the procedure set forth in the special use ordinance. Zoning Code, § 15.153.08.132.
The purpose of the special use ordinance, as stated on its face, is the accommodation of desirable land uses which cannot be subject to rigid and restrictive classification into the traditional residential, commercial, and industrial zoning districts. It is the legislative accommodation of special uses which necessitates an administrative review of the impact of the special use at a particular location within a given zoning district. Accordingly, "the requirement for a use permit is set out in the ordinance so that the body entrusted with the task of reviewing the application ... can make certain that it would not adversely affect the public interest if placed in a particular location within the permitted zone." 3 Ziegler, Rathkopf's The Law of Zoning and Planning § 41.01, p. 4 (1981).
The inclusion of churches and church-operated facilities as special uses in the ordinance does not evince an intent to regulate religious belief. Instead, such inclusion recognizes churches as one of many uses which do not fit easily into traditional zoning districts. The procedure set forth in the ordinance represents Evansville's determination to accommodate land use, and it applies to all special uses without regard to the religious or philosophical beliefs of the various landowners. Regulation of land use is a secular public purpose, and the special use ordinance carries out this purpose in a manner which is generally applicable to all special uses.
Wilson contends that the entire Evansville Zoning Code is not neutral because it requires churches and church-operated facilities to acquire a special use permit in a commercial district while authorizing similar uses, such as meeting halls, lodges, and union halls, to operate without acquiring a permit.[2] Wilson's contention is misplaced because the land uses referenced by Wilson may be both readily classified into particular traditional zoning districts and prohibited from existing in other zoning districts. However, as noted above, special uses of land cannot be readily classified or restricted to certain zoning districts. Thus, special uses, such as schools and churches, are entitled to special consideration and are permitted in all traditional zoning districts even though they are not strictly compatible with the designated uses of that district. The regulation of land use under the Evansville Zoning Code is both generally applicable to special uses and neutral. Accordingly, the Code and the special use ordinance pass constitutional muster under Smith.[3]
After listing the various procedural provisions of the special use ordinance in its findings of fact, the trial court concluded that the procedures set forth in the ordinance for the acquisition of a special use permit constituted a substantial and unreasonable burden upon Wilson's free exercise of religion. Indiana courts have not specifically addressed the problem of how to determine whether the conditions imposed on the acquisition of a special permit are too onerous. However, one authority has noted that conditions imposed on a special permit are proper *861 "provided they do not, by their cost, magnitude, or volume, operate indirectly to exclude such uses altogether." 83 AM. JUR.2d Zoning and Planning § 443 (1992) (citing Cornell University v. Bagnardi, 68 N.Y.2d 583, 510 N.Y.S.2d 861, 503 N.E.2d 509) (emphasis supplied). We find this authority to be instructive.
The special use ordinance requires a landowner to (1) ascertain the names of the owners and tax codes of neighboring property; (2) pay an application fee; (3) file an application listing the owners and tax codes of the neighboring property; (4) supplement the application with a site plan showing the proposed use of the land, the location of buildings and structures, streets, access drives, off street parking, loading facilities, landscaping, green areas, and other specifications deemed necessary; (5) pay a legal ad fee for notification by newspaper; (6) mail notice via certified mail, return receipt requested to neighboring landowners; (7) submit a notarized affidavit regarding notice prior to the hearing; (8) attend the meeting at which the application is to be heard; and (9) obtain a vote of approval from a majority of the BZA members. The conditions require the expenditure of a reasonably small amount of time, effort, and money. Although the conditions constitute a burden upon Wilson, they do not constitute an unreasonable burden. The conditions are not so onerous that they indirectly exclude the special use by their cost, magnitude, or volume.

II. PRIOR RESTRAINT
In his briefs directed to this court and the trial court, Wilson argued that the special use ordinance constitutes a prohibited prior restraint on religious speech under the reasoning of Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). In Kunz, the supreme court held that a city ordinance making it unlawful to hold public worship meetings on the streets without first obtaining a permit from a city official was invalid as a prior restraint on the exercise of the right of free speech. 340 U.S. at 293, 71 S.Ct. at 314. The court reasoned that the ordinance improperly gave the city official discretionary power to control in advance the right of citizens to speak on religious matters on the streets of the city. Id.
The trial court applied Kunz to reach the conclusion that the special use ordinance is a prior restraint upon Wilson's right to engage in religious speech. The court based its conclusion on its determination that the criteria set forth in the ordinance for the approval of an application for a use permit are "sufficiently subjective that the [BZA] enjoys a wide degree of discretion in whether or not to approve an application for a special use permit."[4] (R. 393). The trial court further concluded that the BZA's discretion to use the criteria in refusing to grant a special permit, coupled with its discretion to place reasonable conditions upon the grant of a permit, was so "wide" as to constitute "an unconstitutional prior restraint on the free exercise of religion." (Conclusion of Law # 6, R. 394).
The special use ordinance is a neutral regulation of general applicability dealing with land use and determinations of the impact of those uses upon public health, welfare, and safety. The ordinance understandably gives the BZA discretion to apply general criteria and conditions to the potential interference with public health, welfare, and safety occasioned by uses ranging from schools and churches to hospitals, crematoria, sanitary landfills, and livestock auction houses. The ordinance is intended to regulate the use of land, not the speech of the owner of that land.
*862 To the extent that the special use ordinance has an effect on Wilson's right to free speech, we find that it does not impermissibly imbue the BZA with unfettered discretion. The ordinance itself clearly indicates that discretion given to the BZA is to be used to help accommodate the special use. Furthermore, we have previously held that a zoning board's denial of a special permit will be subject to strict review. See Board of Zoning Appeals v. Schulte, 241 Ind. 339, 172 N.E.2d 39, 43 (1961) (holding that the adverse effect on property values is insufficient reason to deny a special permit to a church); Milharcic v. Metropolitan Board of Zoning Appeals of Marion County, 489 N.E.2d 634, 637 (Ind.Ct.App.1986) (holding that restrictions upon religious facilities are appropriate only where "the need or benefit which occasions the exercise of police power outweighs the restriction on the rights of freedom of worship and assembly"); Board of Zoning Appeals of Decatur v. Decatur, Indiana Company of Jehovah's Witnesses, 233 Ind. 83, 117 N.E.2d 115, 120-21 (1954) (holding that lack of off-street parking was an insufficient reason to justify denial of a building permit to a church). Accordingly, the BZA's discretion to deny a special use to Wilson is severely limited.

III. DISCRIMINATION
The trial court found that Wilson was advised that the Plan Commission defined the term "church" as relating to a "Christian oriented institution." (Finding of Fact # 5, R. 389-90). The trial court concluded that "the [Plan Commission's] operative definition of a church as a Christian oriented institution would by definition exempt other religions of a non-Christian nature from the requirement of obtaining a special use permit." (Conclusion of Law # 11, R. 395). It further concluded that the "exemption of other non-Christian religions from the requirement to obtain a special use permit constitutes an impermissible discrimination against worshipers of the Christian faith and is thus unconstitutional." (Conclusion of Law # 12, R. 395).
The trial court's finding is based upon the circled portion of a page copied from a legal dictionary and sent to Wilson by a zoning enforcement officer in response to his inquiry about the definition of the term as used in the special use ordinance. The circled definition, which was sent prior to Wilson's 1994 application for special use, characterizes a church as "[i]n its most general sense, the religious society founded and established by Jesus Christ, to receive, preserve, and propagate his doctrines and ordinances." (R. 443).
Initially, we must express our incredulity that the BZA would actually ascribe such a narrow definition to the term. However, given the evidence presented to the trial court, we cannot find that the trial court's finding of fact is clearly erroneous. However, we do find that the trial court's ultimate conclusion of law on this issue is clearly erroneous.
The Evansville Zoning Code permits specified uses in specific zoning districts. Absent a special use permit or grant of variance, all other uses in these districts are forbidden. If we accept the trial court's finding of fact, "Christian oriented" churches may operate in any district as a special use upon the grant of a special use permit. "Non-Christian" religious institutions, however, are neither specified uses nor special uses. Accordingly, the landowner wishing to use land as a "non-Christian" institution must secure the grant of a variance. The grant of a variance is much more difficult to obtain than the grant of a special use permit. See Boffo v. Boone County Board of Zoning Appeals, 421 N.E.2d 1119, 1124 (Ind.Ct.App. 1981) (quoting Rathkopf, § 41.10, pp. 19-20 (1980)). Thus, landowners practicing "non-Christian" religions, not "Christian oriented" churches, would be discriminated against.[5]

CONCLUSION
The trial court erred in finding the special *863 use ordinance unconstitutional.[6] Accordingly, we reverse and remand for entry of a declaratory judgment in favor of the Plan Commission and Evansville.
Reversed and remanded.
ROBB and FRIEDLANDER, JJ., concur.
NOTES
[1] Neither party points to a particular request for specific findings or to a statute requiring specific findings.
[2] Although only the special use ordinance was submitted as evidence at the hearing on this matter, both parties have referred to applicable provisions of the complete Evansville Zoning Code. Because a copy of the entire Code is included in the record, we will address the issue of the neutrality of the entire code.
[3] In Attorney General v. Desilets, 418 Mass. 316, 636 N.E.2d 233, 235 (1994), the Massachusetts Supreme Court recognized that the free exercise clause of the Massachusetts Constitution, though almost identical to the free exercise clause of the United States Constitution, could be interpreted to provide more protection of religion than afforded by the Smith decision. The court held that it "prefer[red] to adhere to the standards of earlier First Amendment jurisprudence...." Id. at 236.

In this appeal, the parties do not raise the issue of whether the Evansville Zoning Code or the special use ordinance violate Article I, § 3 of the Indiana Constitution specifying that "[n]o law shall, in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience." The issue is left for another day.
[4] The special use ordinance sets forth the following six criteria for the approval of an application for special use:

(1) Whether the specific site is an appropriate location for the use.
(2) Whether the use as developed will adversely affect the surrounding area.
(3) Whether there will be nuisance or serious hazard to vehicle, pedestrians, or residents.
(4) Whether adequate and appropriate facilities will be provided for proper operation of the use.
(5) Whether the use is in harmony with the Evansville and Vanderburgh County Comprehensive Plan.
(6) Whether the use is essential or desirable to the public convenience and welfare.
Zoning Code, § 15.153.08.132(B).
[5] While we don't decide the issue, we note that a proper interpretation of "church" would encompass any organization for religious worship. We further note that it has been held that the term "`church' as expressive of a place is not limited to the Christian religion." State v. Vogenthaler, 89 N.M. 150, 548 P.2d 112, 113 (1976).
[6] We note that Wilson attempts to raise in his appellee's brief the issue of whether the special use ordinance violates the establishment clause of the First Amendment. Wilson did not allege or argue this issue before the trial court, and the trial court did not find that the special use ordinance violated the establishment clause. Wilson's failure to raise the issue below results in waiver of the issue on appeal. See R.R.S. II Enterprises, Inc. v. Regency Associates, 646 N.E.2d 56, 59 (Ind.Ct.App.1995), reh'g denied, trans. denied.