**David and Kelley ALANI, Appellants–Defendants,**

v.

**MONROE COUNTY BANK, Appellee–Plaintiff.**

No. 53A05–9904–CV–154.

Court of Appeals of Indiana.

May 26, 1999.

Rehearing Denied Sept. 21, 1999.

F. Jonathan Zusy, Ancel & Dunlap, L.L.P., Indianapolis, Indiana, Attorney for Appellants.

Gregory Scott Lauer, Jones, McGlasson & Benckart, Bloomington, Indiana, Attorney for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

This action concerns default on a promissory note executed in favor of D.S. Alani and Associates, Inc. (the "Corporation") and guaranteed by David and Kelley Alani (the "Alanis"). The trial court found in favor of the Monroe County Bank (the "Bank") for the unpaid balance due on the note. The Alanis appeal and we affirm.

### Issue

The parties raise two issues for our review. However, because the first issue is dispositive, we restate the issue as whether the Alanis were entitled to release from liability on their personal guaranty to the Bank where the Alanis allege that the Bank unjustifiably impaired the collateral securing the loan.

### Facts and Procedural History

In 1989, the Bank made three loans to the Corporation. The focus of this case is on the third loan, in the amount of $38,700, which was secured by a mortgage on real estate referred to as "The Pointe" property in Monroe County. With the execution of the loan, the Alanis also executed a loan guaranty agreement, in which they personally guaranteed payment for the loan amount in the event that the Corporation defaulted on the loan.

The closing for the loan occurred on December 28, 1989. The following day, the Bank attempted to record a deed and the mortgage to perfect its lien in favor of the Bank. However, the Monroe County Auditor's Office (the "Auditor") refused to transfer the deed. On the next working day, the Bank again attempted to record the mortgage. The Auditor again refused to transfer the deed and informed the Bank that the Bank needed to obtain approval from the Monroe County Planning Department.[1] Evidently, the Auditor mistakenly believed that further subdivision approval from the Planning Department was necessary before the Auditor could transfer the property. The Bank, with the help of the Monroe County Land Title Company, requested a waiver of approval from the Planning Department. The Planning Department then considered the request for two weeks before determining that no approval action was necessary. Finally, on January 18, 1990, after being notified by the Planning Department that no approval was necessary, the Auditor transferred the deed and the mortgage and deed were recorded.

Meanwhile, on January 12, 1990, the Corporation filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. Because the Bank failed to record the deed and mortgage before the Corporation filed for bankruptcy, the mortgage was not perfected and became subject to the Bankruptcy Trustee's avoidance powers. The property was eventually sold for $14,000. In accordance with a settlement agreement with the Trustee, the Bank received forty percent of the proceeds, or $4,931.37, while the remainder went to the Corporation's bankruptcy estate. The Bank sought to recover the unpaid principal, $15,268.63, plus interest, from the Alanis. The Alanis maintained that they were discharged from liability because the Bank unjustifiably impaired the value of the collateral securing the loan by failing to timely record the mortgage.

Following a bench trial, the trial court held that while an impairment had occurred, the impairment was not "unjustified" since the Bank "acted in a prudent and responsible

---

1. The Bank did not attempt to separately record the mortgage despite its inability to record the deed.

manner" in attempting to record the mortgage. The court then ordered the Alanis to pay the $15,268.63, plus interest and attorney's fees.

### Discussion and Decision

In the instant case, the trial court entered findings of fact and conclusions thereon. In reviewing the judgment, we employ a two-tiered standard of review. First, we determine whether the evidence supports the findings and next we determine whether the findings support the judgment. *Ahuja v. Lynco Ltd. Medical Research*, 675 N.E.2d 704, 707 (Ind.Ct.App.1996), *trans. denied.* The court's findings and conclusions will be set aside only if they are clearly erroneous; that is, if the record contains no facts or inferences supporting them. *Id.* We will consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ In Indiana, the guarantor of a debt may seek to avoid personal liability in a suit by a creditor by asserting the impairment of collateral defense. *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 66 (Ind. 1995). Pursuant to this defense, the guarantor's liability will be discharged if the facts establish that the creditor's conduct unjustifiably impaired the collateral securing the debt. *See Wisconics Engineering, Inc. v. Fisher*, 466 N.E.2d 745, 767 (Ind.Ct.App. 1984), *trans. denied.* In discussing the reason behind this defense, our supreme court has stated:

> That a guarantor may interpose the defense that a creditor impaired the collateral makes sense for two reasons. First, the guarantor at the time of making a guaranty may make the judgment that the collateral for the loan to the guarantor's principal will be sufficient to cover the debt. If the creditor impairs the collateral, and the guarantor has not consented to release or other impairment of the collateral, the guarantor may become exposed to liability beyond the guarantor's expectation at the time the parties entered into the contract.
>
> . . . .
>
> Second, a guarantor who satisfies the principal debtor's obligation to the creditor generally steps into the shoes of the creditor, becoming subrogated to the creditor's claim and assuming both the creditor's rights and duties. Thus, when a creditor unjustifiably impairs the collateral securing a guaranteed loan, it impairs the guarantor's recourse against the guarantor's principal, which recourse the guarantor would have understood itself to have at the time of contracting to guaranty the principal's debt.

*Letsinger*, 652 N.E.2d at 66–67 (citations omitted).

In the instant case, both parties stipulate that there was an "impairment" of the collateral which was to secure the loan in question. However, the Bank asserts that the impairment did not constitute an "unjustified" impairment since the Bank made many attempts to record the documents in a timely fashion. Conversely, the Alanis argue that the delay in recording the documents was not justified and, in any event, the collateral securing the loan was unjustifiably impaired due to the Bank's actions or inactions, thus releasing them from any obligation under the guaranty.

In determining that the Alanis were not released from their obligation under the guaranty, the trial court focused on the Bank's actions in attempting to record the mortgage. The trial court stated that, in light of the *Wisconics* and *Hedrick* decisions, it was required to "evaluate the nature of the Bank's conduct in light of the particular factual circumstances." Record at 297. Concluding that "the actions of the Bank with respect to the collateral d[id] not appear irresponsible, but instead quite reasonable", the trial court found that no unjustified impairment of the collateral had occurred. The Alanis urge us to reject the trial court's reasoning and argue instead that the Bank's failure to timely record the mortgage, in and of itself, constitutes an unjustified impairment of the collateral. In the alternative, the Alanis also argue that the Bank's actions were per se negligent, thus rendering its failure to record the mortgage "unjustified." We address each argument in turn.

■ Impairment of collateral has been defined as both injury to the value of the collateral and deterioration of the interest securing the collateral, *White v. Household Finance Corp.*, 158 Ind.App. 394, 302 N.E.2d 828, 835 (1973), and as "unreasonable acts which make the collateral unavailable to the surety and increase his risk." *Wisconics,* 466 N.E.2d at 767. In *Wisconics,* a corporation, Wisconics Engineering, Inc. ("Wisconics"), formed an agreement with another corporation, Fisher Engineering, Inc. ("Fisher Engineering"), to purchase 100% of the outstanding shares of Fisher Engineering's stock. A promissory note was executed by Wisconics and was personally guaranteed by the defendants, Niall Fitzpatrick and John Zenner. *Id.* at 748. In addition to the note and guaranty, the parties also executed a pledge agreement and an installment stock purchase agreement. Under the terms of these agreements, Fisher, the president and sole shareholder of Fisher Engineering, was to hold the Fisher Engineering shares as security for the note indebtedness and to receive any and all dividends declared on the stock. *Id.* at 749. Several years later, Wisconics defaulted on their note. Shortly thereafter, Fisher elected to vote the stock, which he held pursuant to the pledge agreement, and reinstated himself as president of the corporation. *Id.* at 750. Fisher filed suit against Fitzpatrick and Zenner for the outstanding installment payments that the defendants failed to make, and also filed a motion for summary judgment on the note, which the trial court granted. *Id.*

In their defense, Fitzpatrick and Zenner asserted that they were released from their obligation under the note since Fisher's actions constituted an impairment of the collateral. The court on appeal reversed and remanded the case to the trial court after determining that it was "unable to resolve the question whether Fisher's acts constitute an impairment so as to release Fitzpatrick and Zenner from their guaranty." *Id.* at 767. The court first found that there was insufficient evidence to determine whether the stock was in fact impaired in value. However, the court also stated:

Furthermore, even if, *arguendo,* the collateral is impaired, the Code adds the additional requirement that the holder must have "unjustifiably" impaired the collateral. While we venture no opinion as to what may constitute a "justified" impairment, we note only that if the situation in the summer of 1982 was as Fisher claims—that Fisher Engineering was facing lawsuits by its creditors, insolvency, and unable to pay its current debts—we think a trier of fact might reasonably conclude that Fisher's actions were justified. *Id.*

In *Hedrick v. First National Bank & Trust Co. of Plainfield,* 482 N.E.2d 1146 (Ind.Ct.App.1985), the defendants, Donald Hedrick and Russell Murphy, personally guaranteed a promissory note to a bank, executed by two corporations, of which they were officers. The loan was secured by a real estate mortgage on land owned by the corporations, which was subject to a first mortgage in favor of Allied Fidelity Insurance Corporation. *Hedrick,* 482 N.E.2d at 1147. The corporations eventually defaulted on the loan and became subject to Chapter 11 bankruptcy proceedings. During bankruptcy proceedings, the bankruptcy court granted Allied Insurance Corporation a super-priority lien to secure advances to the corporations. The bank then filed suit against Hedrick and Murphy to recover the balance due on the note. *Id.* In their defense, Hedrick and Murphy claimed that the value of the collateral to secure the loan had diminished to almost nothing as a result of the bankruptcy court's actions, thus entitling them to a release of their obligation on the note. The trial court found in favor of the bank. *Id.*

On appeal, this court affirmed the trial court's decision. In so holding, the court stated that, through prior consent, Hedrick and Murphy had waived their right to discharge. *Id.* at 1148. However, the court also stated: "Even without waiver of discharge, Hedrick and Murphy have not shown that the Bank unjustifiably impaired the collateral.... There was no evidence to indicate that the Bank was responsible for any circumstances which placed Bank behind lienholders holding liens...." *Id.* at 1149.

■ Based on the *Wisconics* and *Hedrick* decisions, we conclude that the trial court did

not err in taking the Bank's actions into consideration when determining whether the Bank had unjustifiably impaired the collateral. Both decisions contemplate the creditor's actions in determining whether there has been an unjustified impairment of collateral. Moreover, in *White,* this court stated that an impairment of collateral pursuant to Indiana Code Section 26-1-3-606 occurs: "When a creditor releases or *negligently fails* to protect security put in his possession by the principal debtor, the surety is released to the extent of the value of the security so impaired." *White,* 302 N.E.2d at 833 (emphasis added).

■ The Alanis next assert that the trial court erred in deciding that the Alanis were not released from their obligation under the note since there was evidence that the Bank acted in an unjustified and negligent manner in failing to record the mortgage in a timely fashion. This claim essentially asks us to reweigh the evidence presented to the trial court, which we decline to do on appeal. That there might be another interpretation of the facts does not aid the Alanis on appeal as we will not set aside the trial court's findings unless they are clearly erroneous. The trial court's findings indicate that the Bank tried, on several occasions, to record the mortgage in question but was unable to do so because of a misunderstanding in the Auditor's office. The Bank even sought assistance from an outside title company who acted with the Bank to have the error corrected. Based on our review of the record, the evidence supports these findings and the findings support the trial court's judgment. Therefore, we conclude that the trial court did not err in rejecting the Alanis' impairment of collateral defense.

Having determined that the trial court did not err in its unjustifiable impairment inquiry, we need not address the Bank's contention that the Alanis waived the impairment of collateral defense by consent.

Affirmed.

KIRSCH, J. and BAILEY, J. concur.