The **INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,**
Appellant–Defendant,

v.

**RAYBESTOS PRODUCTS COMPANY,**
Appellee–Plaintiff.

No. 49A02–0609–CV–782.

Court of Appeals of Indiana.

Nov. 15, 2007.

Steve Carter, Attorney General of Indiana, David L. Steiner, Frances Barrow, Timothy J. Junk, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellant.

George M. Plews, Brett E. Nelson, Plews Shadley Racher & Braun LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

The Indiana Department of Environmental Management ("IDEM") appeals the judgment of the Marion Superior Court in favor of Raybestos Products Company ("Raybestos") in Raybestos's breach of contract claim. IDEM raises three issues upon appeal, one of which we find dispositive: whether the trial court erred in granting partial summary judgment on the issue of whether IDEM breached an agreed order entered into by the parties thus giving rise to a breach of contract claim.

We reverse.

### Facts and Procedural History

Raybestos operates a plant in Crawfordsville, Indiana which manufactures automobile brakes and clutches. The plant is located next to Shelly Ditch, which is an open earthen drain bordered by seventeen homes, a school, a fairground, and a swimming pool. Surface water from the Raybestos plant flows through a culvert into Shelly Ditch, which empties into Sugar Creek approximately one mile from the Raybestos plant. Testing performed in 1995 by IDEM revealed that polychlorinated biphenyls, commonly known as "PCBs," were found in Shelly Ditch downstream from the Raybestos plant, but not upstream.

Eventually, IDEM sent Raybestos a notice of potential liability. IDEM also sent a memorandum to the federal Environmental Protection Agency ("EPA") recommending that Shelly Ditch be listed as a high priority in the Superfund Hazard Ranking. Instead, the EPA listed the Raybestos site as a low priority because IDEM was negotiating a cleanup order. On February 28, 1997, IDEM and Raybestos entered into an "Agreed Order" pursuant to Indiana Code section 13–25–4–23 (1998), in which Raybestos agreed to prepare a risk assessment subject to the approval of IDEM. Then, based upon the risk assessment, Raybestos was to propose

a removal plan, again subject to IDEM approval.

Raybestos prepared and submitted a risk assessment, which was ultimately approved by IDEM. Based upon the risk assessment, Raybestos then submitted its "technical memorandum" describing its planned cleanup. The proposed cleanup allowed certain "hot spots" to contain PCB levels of no more than 238 parts per million ("ppm"). Following personnel changes, IDEM determined that Raybestos' proposed cleanup would not be approved because it would set a bad precedent. IDEM then disapproved the cleanup proposal and, because the cleanup proposal was based upon the already-approved risk assessment, withdrew its approval of the risk assessment.

Displeased with this turn of events, Raybestos sought administrative review of IDEM's actions. At a dispute resolution meeting, IDEM informed Raybestos that no PCBs could be present at the cleanup site at levels higher than 10 ppm. After a hearing before an Administrative Law Judge ("ALJ"), the ALJ determined that Raybestos had waived its right to seek review of IDEM's actions based upon the terms of the Agreed Order. Raybestos sought judicial review of the ALJ's determination in the Marion Circuit Court. On June 1, 2001, Judge Michael D. Keele issued findings of fact and conclusions of law, determining therein that Raybestos had not waived its right to seek review of IDEM's actions and that IDEM had no authority to withdraw its earlier approval of the risk assessment. Judge Keele ordered IDEM to re-approve the risk assessment and ordered it to approve of the cleanup proposed in Raybestos' technical memorandum. IDEM did not appeal this order. Instead, IDEM had been contacting the EPA and, after considerable prodding, convinced the EPA to become involved in the cleanup of the Raybestos site. On December 6, 2000, the EPA issued a Unilateral Administrative Order requiring Raybestos to clean up the PCBs to a level of no greater than 10 ppm. The cleanup required by the EPA was substantially more costly than the one which was approved by IDEM per court order.

On July 26, 2003, Raybestos filed in the Marion Superior Court a complaint for breach of contract against IDEM, alleging that IDEM had breached the Agreed Order and seeking as damages the substantially higher costs of the EPA-imposed cleanup. On December 17, 2003, IDEM filed a motion for summary judgment, which Raybestos responded to by filing a cross-motion for summary judgment. On June 10, 2004, the trial court held a summary judgment hearing. On July 6, 2004, the trial court granted partial summary judgment in favor of Raybestos on the issue of breach, but determined that there were genuine issues of material fact as to whether the EPA's involvement was a direct consequence of IDEM's solicitations.

On August 3, 2005, the parties filed stipulations regarding damages, and on August 8, 2005, a bench trial began. On June 12, 2006, the trial court entered judgment in favor of Raybestos in the amount of $11,645,321.58. On October 30, 2006, the trial court entered judgment regarding additional damages and attorney fees in the amount of $4,716,691.33. IDEM now appeals.

**Standard of Review**

In this case, IDEM challenges several of the trial court's orders. However, as we find the summary judgment issue dispositive, we address only the trial court's grant of summary judgment in favor of Raybestos on the issue of whether IDEM's actions constituted a breach of the Agreed Order.

Summary judgment is a procedural means to halt litigation when there are no factual disputes and to allow the case to be determined as a matter of law. *Garneau v. Bush*, 838 N.E.2d 1134, 1140 (Ind.Ct. App.2005), *trans. denied.* Under Indiana Trial Rule 56, the moving party bears the burden of showing that there are no genuine issues of material fact; if the moving party meets its burden, then the burden shifts to the nonmoving party to set forth facts showing the existence of a genuine issue for trial. Id. Summary judgment is appropriate only where the designated evidence reveals no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Id.* Summary judgment is inappropriate if any material facts are in dispute or even if undisputed facts can lead to conflicting material inferences. *Id.*

**Discussion and Decision**

■ In its order granting partial summary judgment to Raybestos, the trial court concluded that the Agreed Order was a valid contract and that IDEM breached the Agreed Order. However, the trial court concluded that genuine issues of material fact precluded summary judgment on the issue of resulting damages. IDEM claims that the Agreed Order is not a valid contract, but that even if it were to be considered a valid contract, its actions did not constitute a breach. Thus, if we assume without deciding that the Agreed Order was a binding contract, the dispositive issue becomes whether IDEM breached the Agreed Order.

Raybestos argues that IDEM's actions breached the Agreed Order. Although the parties present many arguments, we find one to be dispositive: whether the cleanup IDEM originally agreed to complied with applicable federal regulations. The clean-

up proposed by Raybestos, which was based upon the Risk Assessment which IDEM had already approved, called for a cleanup level of 238 ppm. IDEM claims that the applicable federal regulations require PCB spills to be cleaned up to a level of no more than 10 ppm. In support of this claim, IDEM cites 40 C.F.R. section 761.125(c)(4)(v) (2007), which states in relevant part:

Soil contaminated by the spill will be decontaminated to 10 ppm PCBs by weight provided that soil is excavated to a minimum depth of 10 inches. The excavated soil will be replaced with clean soil, i.e., containing less than 1 ppm PCBs, and the spill site will be restored (e.g., replacement of turf).

Raybestos does not directly deny the applicability of this federal regulation in its appellee's brief. Raybestos does refer to 40 C.F.R. section 761.120(c) (2007), which gives the EPA the "flexibility to allow less stringent or alternative decontamination measures based upon site-specific considerations." Raybestos does not explain, however, how this section allows IDEM the same flexibility.[1] More importantly, the Agreed Order upon which Raybestos bases its breach of contract claim specifically states that the most stringent standard will apply. *See* Appellant's App. p. 3730.

Thus, the 238 ppm cleanup proposed by Raybestos and based on the IDEM approved risk assessment did not meet the applicable federal standards. We fail to see how IDEM had any authority to approve a cleanup which did not comply with these standards. Again, such compliance was contemplated in the Agreed Order itself, which provided that, in the case of a conflict in the applicable laws, rules, or ordinances, that the most stringent stan-

---

1. It is apparent that the EPA did not order a    less stringent cleanup at the Raybestos site.

dard would apply. *See* Appellant's App. p. 3730.

■ Based upon public policy grounds, we will not enforce agreements that contravene statute, that clearly tend to injure the public in some way, or that are otherwise contrary to the declared public policy of Indiana. *Ahuja v. Lynco Ltd. Med. Research*, 675 N.E.2d 704, 707 (Ind.Ct. App.1996), *trans. denied.* Clearly, an agreement which would permit cleanup levels over twenty times that of the applicable federal regulations would be contrary to public policy, and Raybestos may not rely upon such an agreement or recover for any breach thereof by IDEM. We therefore reverse the judgment of the trial court.

Reversed.

BAKER, C.J., and KIRSCH, J., concur.