## In re the VISITATION OF C.H.

### No. 49A02–0303–CV–211.

Court of Appeals of Indiana.

July 31, 2003.

Steven C. Litz, Monrovia, IN, Attorney for Appellants.

## OPINION

KIRSCH, Judge.

Bobby and Debra Harris ("the Harrises") appeal the trial court's decision denying their petition to establish grandparent visitation, presenting the following restated issue for review: did the trial court

which denied grandparent visitation on the basis that the presumption that fit parents act in the best interests of their children had not been rebutted utilize an incorrect standard or abuse its discretion?

We affirm.

### FACTS AND PROCEDURAL HISTORY

C.H. was born on March 29, 2000 to April Dove and Bobby Harris, Jr. Since Bobby Harris, Jr. established paternity of C.H., the Harrises, the parents of Bobby Harris, Jr., have been actively involved in C.H.'s life and provided her care on a nearly daily basis.

In September 2002, Debra and Dove argued, and Dove refused to let the Harrises see C.H. for about two weeks. However, either Bobby Harris, Jr. intervened or Dove relented, and C.H.'s contact with her grandparents resumed.

Nonetheless, the Harrises petitioned for grandparent visitation, fearing that future disagreements with Dove would cause her to deny them access to C.H. again. After a hearing, the trial court denied the petition. The Harrises now appeal.

### DISCUSSION AND DECISION

■ The trial court noted that neither Dove nor Bobby Harris, Jr. had been shown to be unfit parents and that "[t]here has been no rebuttal of the presumption that [ ] fit parents act in the best interest of children.... There is no reason for this trial court to interfere with the right of [C.H.]'s parents to determine her upbringing." *Appellant's Appendix* at 6–7. The Harrises contend that the trial court employed the wrong standard and reached an erroneous decision.

IC 31–17–5–1 gives grandparents the right to seek visitation of a grandchild if the child's parent is deceased, the marriage of the child's parents has been dis-solved in Indiana, or the child was born out of wedlock and the father has established paternity. IC 31–17–5–2(a) provides that a trial court "may" grant visitation rights to grandparents "if the court determines that visitation rights are in the best interests of the child." The use of the permissive "may" in a statute clearly indicates that a trial court is not required, but may do so within its discretion. *Daugherty v. Ritter*, 646 N.E.2d 66, 68 (Ind.Ct.App. 1995), *adopted* 652 N.E.2d 502 (Ind.1995).

■ The determination of the best interests of the child is committed to the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of that discretion. *Swartz v. Swartz,* 720 N.E.2d 1219, 1221 (Ind.Ct. App.1999). An abuse of discretion exists where the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom. *Id.* We will not reweigh the evidence nor judge the credibility of the witnesses. *Id.*

Here, the Harrises contend that the trial court erred in citing and relying on *Troxel v. Granville*, 530 U.S. 57, 68, 120 S.Ct. 2054, 2061, 147 L.Ed.2d 49 (2000). In that case, the United States Supreme Court considered a state court decision granting grandparents visitation where their son, the children's biological father, had died, and the children's mother had remarried. The Court observed that the grandparents did not allege, and no court had found, that the mother was an unfit parent. The Court explained that "there is a presumption that fit parents act in the best interests of their children." *Id.* at 68, 120 S.Ct. at 2061. It further noted that there was no allegation that the mother ever sought to eliminate visitation entirely. Rather, the mother and the grandparents simply disagreed as to how frequently the visitation should occur.

Ultimately, the Court held that the visitation order was an unconstitutional infringement on the mother's fundamental right to make decisions concerning the care, custody, and control of her two daughters and failed to accord the mother's determination any material weight. The Court characterized the case as "involv[ing] nothing more than a simple disagreement between the Washington Superior Court and [the mother] concerning her children's best interests." *Id.* at 72, 120 S.Ct. at 2064.

We acknowledge that *Troxel* involved the interpretation and application of a Washington visitation statute that is broader than Indiana's. Nonetheless, we do not believe the trial court utilized an incorrect standard or abused its discretion in employing a similar analysis here.

 Grandparent visitation statutes are a legislative recognition that a child's best interest is often served by developing and maintaining contact with his or her grandparents. *Swartz,* 720 N.E.2d at 1221. Grandparents, however, do not have the legal rights or obligations of parents. *Id.* Moreover, parents generally have the right to raise their children as they see fit. *Id.*

In *Swartz,* 720 N.E.2d at 1222, we held that the trial court abused its discretion in awarding visitation to the child's grandparents. In so holding, we explained that the child's mother never denied the grandparents access to the child, and all of the parties had a good relationship. We explained,

"While we agree that the Act applies in such cases, we note that the interest at stake is different. Here, the Grandparents are not pursuing the right to have a relationship with C.S., but the right to have the type of visitation they want. In essence, they were not satisfied with the terms of the visitation dictated by Mother, C.S.'s parent."

*Id.* at 1223. We then reviewed the extent of visitation awarded in the trial court's order and determined that it was an abuse of discretion. *Id.*

Here, the trial court pointed out that neither Dove nor Bobby Harris, Jr. was an unfit parent. Moreover, with the exception of the two-week period during which the family quarreled, the Harrises have had substantial access to C.H. At the hearing, Dove acknowledged the importance to C.H. of her relationship with the Harrises and expressed no hesitation at allowing the Harrises to see C.H. Like the grandparents in *Swartz,* the Harrises have not been denied the opportunity to have a relationship with C.H. They instead seek to have a relationship on their terms, without regard to the wishes of C.H.'s parents.

In *Daugherty,* 646 N.E.2d at 68, we explained:

"The ultimate question is whether visitation in the face of family discord is in the child's best interest. That question can only be answered by looking at the totality of the circumstances presented. While the relationship may, in any given case, be sufficient to make grandparent visitation in the child's best interest, notwithstanding the dissension between the parent and grandparent, it may not be sufficient to overcome the effects of the discord on the child in another. That difficult determination is left to the wisdom and the discretion of the trial court."

In this case, the trial court acted within its discretion in declining to order visitation between C.H. and the Harrises under the circumstances.

Affirmed.

MAY, J., and MATHIAS, J., concur.