**Mark R. WENZEL, Appellant–Respondent,**

v.

**HOPPER & GALLIHER, P.C., formerly known as Hopper, Wenzel & Galliher, P.C., et al., Appellee–Petitioner.**

No. 49A02–0402–CV–134.

Court of Appeals of Indiana.

July 19, 2005.

Kevin P. McGoff, Kiefer & McGoff, Indianapolis, for Appellant.

Deborah J. Caruso, Dale & Eke, P.C., Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Mark R. Wenzel appeals the trial court's judgment in favor of Hopper & Galliher, P.C. ("H & G"), formerly known as Hopper, Wenzel, & Galliher, P.C. Wenzel raises three issues, which we restate as:

1. Whether the evidence supports the trial court's award of $20,000 in damages to H & G;

2. Whether the trial court erred when it declined to award post-judgment interest on the fair value of Wenzel's shares of stock in H & G; and

3. Whether the trial court erred when it ordered H & G to pay Wenzel the value of his shares only on delivery of his shares or of "an instrument effecting and unequivocally evidencing his surrender of those shares." (Appellant's App. at 180.)

We affirm.

## FACTS AND PROCEDURAL HISTORY

Wenzel, George Hopper and Mark Galliher are attorneys who formerly practiced together in the professional corporation

that is now H & G. These parties have been before this court on two prior occasions. *See Wenzel v. Hopper & Galliher, P.C.,* 737 N.E.2d 1239 (Ind.Ct.App., 2000) (*"Wenzel I"*) and *Wenzel v. Hopper & Galliher, P.C.,* 779 N.E.2d 30 (Ind.Ct.App. 2002) (*"Wenzel II"*). In *Wenzel II,* we stated the facts as follows:

In the fall of 1990, Wenzel began talking to George Hopper ("Hopper") about working as an attorney at Hopper's unincorporated law firm. After a series of meetings, it was agreed that Wenzel would join the firm at the beginning of January, 1991 as a salaried employee and that Hopper would incorporate and capitalize the firm as a professional corporation. At the end of 1991, an agreement was entered into whereby Wenzel and Mark Galliher ("Galliher") would each purchase one third of H & G's stock from Hopper. Under the compensation plan, the net revenues were to be distributed in relation to each shareholder's contribution to the firm.

In the spring of 1994, Wenzel began stating to Galliher that Hopper was not being forthright in his provision of information to Wenzel about H & G's income. Wenzel further stated that he did not like working with Hopper. In September of 1994, Hopper and Galliher completed a trial in which a large settlement was won for H & G's client. Wenzel expressed his belief that he was entitled to one third of the contingency fee from the aforementioned case and that he feared he would be deprived of the share. Discussions began pertaining to a specific formula for determining respective compensation, but Wenzel expressed disapproval of a subsequent proposed formula.

On March 27, 1995, Hopper, Galliher, and Wenzel met for H & G's annual shareholder meeting. The meeting ended with a discussion of the shareholders' inability to resolve the issue of compensation raised by Wenzel, and Wenzel agreed that he would seek employment elsewhere. After the meeting, Wenzel continued to work for H & G's clients and to receive his full salary while he looked for another position. Wenzel ended his employment with H & G on June 30, 1995.

The facts, as contained in the record but not specifically found by the trial court, are as follows. After Wenzel's departure, Hopper and Galliher attempted to negotiate with Wenzel to determine the amount due Wenzel as a withdrawing shareholder of H & G. As part of these negotiations, Wenzel requested to be paid approximately $400,000.00 for his stock and a share of H & G's contingency fees. In response, H & G offered to purchase Wenzel's stock at the amount he paid for it (approximately $27,000.00) and to pay Wenzel a portion of H & G's contingency fees. In response to H & G's offer, Wenzel demanded that H & G file a petition to value Wenzel's shares pursuant to the Indiana Professional Corporations Act (the "Act").

H & G then commenced an action requesting the trial court to determine the fair value of Wenzel's shares. In response, Wenzel asserted claims against H & G, and against Hopper and Galliher individually, for breach of fiduciary duty and "freeze out." H & G subsequently asserted a breach of fiduciary duty claim against Wenzel seeking damages caused by Wenzel's alleged improper pre-departure solicitation of H & G clients.

After a bench trial, the trial court determined the value of Wenzel's stock, denied Wenzel's breach of fiduciary duty claim, and granted H & G's breach of fiduciary duty claim.

779 N.E.2d at 35–36 (internal citations omitted). The trial court awarded H & G $20,000.00 in damages for Wenzel's breach of fiduciary duty. We affirmed in part and reversed in part, stating:

> To the extent that the trial court's findings of fact and conclusions of law pertain to Wenzel's breach of fiduciary duty by secretly soliciting NCB, the trial court's findings are proper. However, the trial court's findings of fact and conclusions of law are clearly erroneous to the extent they apply to the alleged secret solicitation of other clients. We remand with instructions that the trial court adjust its damage award to an amount consistent with this opinion.

*Id.* at 49.

On remand, the parties argued the damages issue. The trial court entered its Order and Judgment on Remand, again awarding $20,000.00 in damages for Wenzel's breach of fiduciary duty. In its order, the trial court stated in relevant part:

> (1) The Court's Findings are revised to provide that the "fair value" of Wenzel's stock is and shall be in the amount of $63,092.31, which amount shall be payable by the Firm to Wenzel, only upon Wenzel's delivery to the Firm of his shares of stock in the Firm, or an instrument effecting and unequivocally evidencing Wenzel's surrender of his shares in the Firm to the Firm;
>
> \* \* \* \* \* \*
>
> (3) Following this Court's further review and consideration of Wenzel's trial testimony regarding his admitted pre-departure solicitation of the Firm's major client, National City Bank, during April, May and June, 1995 while Wenzel was continually employed and compensated by the Firm, the Court finds that judgment should be and is hereby entered in favor of the Firm, and against Wenzel, upon the Firm's counterclaim

against Wenzel for breach of fiduciary duty, in the amount of $20,000.00;

> (4) Wenzel's request for an award of post-judgment interest should be and is hereby denied[.]

(Appellant's App. at 179–81.)

## DISCUSSION AND DECISION

The trial court entered modified findings of fact and conclusions of law following the hearing on remand. As we explained in *Wenzel II:*

> When a party has requested specific findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). In reviewing the judgment, we first must determine whether the evidence supports the findings and second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Medical Research,* 675 N.E.2d 704, 707 (Ind. Ct.App.1996), *trans. denied.* The judgment will be reversed if it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.* A judgment is clearly erroneous even though there is evidence to support it if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made. *Owensby v. Lepper,* 666 N.E.2d 1251, 1256 (Ind.Ct.App.1996).

779 N.E.2d at 36.

### 1. *Award of Damages*

Wenzel argues H & G's "claim for breach of fiduciary duty ... was unsup-

ported by the evidence and contrary to the holding and instructions of this Court on remand[.]" (Br. of Appellant at 13.) In *Wenzel II*, we affirmed the trial court's finding that Wenzel "secretly solicited" H & G's major client, National City Bank ("NCB"), and that the secret solicitation was a breach of Wenzel's fiduciary duty. *Wenzel*, 779 N.E.2d at 48. We remanded, however, because:

> The trial court's determination that Wenzel should forfeit his entire salary of $20,000.00 is premised upon its finding that Wenzel was engaged in secret solicitation during the entire period from March 27, 1995 (the day he gave notice) and June 30, 1995 (the last day of his employment). Because the finding forming the premise for the amount of the damage award is clearly erroneous, we remand with instructions that the trial court determine what amount of damages is occasioned by Wenzel's surreptitious solicitation of NCB.

*Id.*

On remand, the trial court reviewed the evidence and modified its findings as follows:

> (3) Following this Court's further review and consideration of Wenzel's trial testimony regarding his admitted predeparture solicitation of the Firm's major client, National City Bank during *April, May and June, 1995* while Wenzel was continually employed and compensated by the Firm, the Court finds that judgment should be and is hereby entered in favor of the Firm, and against Wenzel, upon the Firm's counterclaim against Wenzel for breach of fiduciary duty, in the amount of $20,000.00.

(Appellant's App. at 180) (emphasis supplied).

 Wenzel maintains there is no evidence he solicited NCB during April, May, and June of 1995. He asserts we held in *Wenzel II* that he communicated with NCB only on June 29, 1995 and that H & G's damages, if any, for an alleged breach of fiduciary duty must have arisen from that single communication.

H & G counters the trial court based its calculation of damages on the compensation H & G paid Wenzel during the three months Wenzel was secretly soliciting NCB. H & G claims we affirmed this approach to computing their damages in *Wenzel II*.

H & G cites numerous decisions from other jurisdictions that hold "an employee may be compelled to disgorge the compensation he received while he was breaching his fiduciary duties." (Appellee's Br. at 13–14.) H & G also cites Restatement (Second) of Agency § 469, which states in pertinent part:

> An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a willful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned.

> \* \* \* \* \* \*

> a. The duties of loyalty of the agent to the principal are stated in Section 387–398. An agent who, without the acquiescence of his principal, acts for his own benefit or for the benefit of another in antagonism to or in competition with the principal in a transaction is not entitled to compensation which otherwise would be due him because of the transaction. This is true even though the conduct of the agent does not harm the principal, and even though the agent believes that his conduct is for the benefit of the principal and he is justified in so acting[.]

An agent is entitled to no compensation for a service which constitutes a violation of his duties of obedience. This is true even though the disobedience results in no substantial harm to the principal's interests and even though the agent believes that he is justified in so acting.

b. A serious violation of a duty of loyalty or seriously disobedient conduct is a willful and deliberate breach of the contract of service of the agent, and, in accordance with the rule stated in Section 456, the agent thereby loses his right to obtain compensation for prior services, compensation for which has not been apportioned.

In *Chelsea Industries, Inc. v. Gaffney*, 389 Mass. 1, 449 N.E.2d 320 (1983), employees set up a competing business in violation of the fiduciary duty they owed the employer. The trial court found the employees liable for $496,009.72, which represented the entire amount of compensation the employer paid them during the period they participated in a joint venture. The employees appealed and the Massachusetts Supreme Court held:

The [employees'] contention misconstrues the equitable nature of the remedy of restoration of compensation for employee breaches of the fiduciary duties of loyalty and diligence. For such breaches, the [employees] can be required to forfeit the right of compensation even absent a showing of actual injury to the employer.

*Id.* at 327.

■ Disgorging an agent of all compensation received during a period of employment in which the agent was also breaching a fiduciary duty to the principal, without a requirement for the principal to demonstrate financial loss, is an equitable, not legal remedy. This approach is consistent with Indiana precedent that a claim for breach of fiduciary duty is an equitable claim. *See G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 244 (Ind.2001) (traditional powers of equity courts are available to fashion a remedy for breach of a fiduciary duty in a close corporation).

The trial court's finding H & G suffered $20,000.00 in damages was based on Wenzel's solicitation of NCB during April, May, and June of 1995. In *Wenzel II*, we noted:

H & G did place into evidence a fax sent by Wenzel to NCB Bank ("NCB"), one of H & G's major clients, in which Wenzel outlined the status of various files that he was working on for NCB. Included in this fax was a paragraph in which Wenzel stated, "As I indicated [in a previous conversation with the client], [my new firm] has agreed that I can continue to provide legal services to NCB at my current rates and under the same terms. Once you have had a chance to review this information, please feel free to call if you have any questions or comments." Even with Wenzel's testimony that this fax was simply a response to NCB's inquiries, the trial court could infer that the communication was a surreptitious attempt to solicit one of H & G's major clients.

779 N.E.2d at 48. That fax was sent to NCB on June 29, 1995. At trial, Wenzel testified regarding his other contacts with NCB:

I received a call or calls from a couple of people [at NCB]... probably Keith Peterson, Jeff Ayres and others...*somewhere between March 27th and June 30th*, telling me that they were aware that I was going to... you know, that we were having difficulties and that we were probably not going to be remaining together, and that I'd be leaving[.] *But as the time period went on*, we did

talk—I and the NCB people—and I told them that I was going to be leaving, and I expressed some interest that if they wanted me to continue working on their files, that I was willing to do that. Near the end, I communicated with Keith Peterson, and I think it pre-dates the 29th because I was trying to figure out what I was going to do on the active cases...the files that still had things that needed to be done. So I called Keith and said 'Look—what are we going to do? How do you want to handle these things?' His request was that I write him a letter and send him the letter that summarized the status of all those cases, so that he could look them over.... I did that, and I indicated to him, both orally...you know, that I was willing to continue to work on those and that it was my view, or that I thought [my new firm] was willing to honor the same sort of fee arrangement that we had had when I was with [H & G] if they wanted me to continue with that.

(Tr. at 1420–21) (emphasis supplied). This testimony, H & G argues, demonstrates Wenzel's breach of fiduciary duty in the form of his plan to "steal the Firm's biggest client, while he was still a shareholder and paid employee of the Firm." (Appellee's Br. at 12.) We agree this evidence supports the trial court's award.

We determined in *Wenzel II:*

The trial court's determination that Wenzel should forfeit his *entire* salary of $20,000.00 is premised upon its finding that Wenzel was engaged in secret solicitation during the *entire period from March 27, 1995 (the day he gave notice) and June 30, 1995 (the last day of his employment). Because the finding forming the premise for the amount of the damage award is clearly erroneous,* we remand with instructions that the trial court determine what amount of

damages is occasioned by Wenzel's surreptitious solicitation of NCB.

*Id.* at 48 (emphasis supplied).

We interpret "the finding" (*id.*) we characterized above as erroneous as the trial court's determination Wenzel had solicited numerous clients in addition to NCB. The question presented to the trial court on remand was what damages H & G might recover for the months Wenzel solicited NCB.

Wenzel's testimony indicates his communication with NCB representatives was ongoing between March and June, 1995. Therefore, we cannot say the record is devoid of facts or inferences to support the trial court's finding as to the amount of H & G's damages. *See Chelsea Industries,* 449 N.E.2d at 327. Accordingly, we cannot disturb the award.

### 2. *Post–Judgment Interest*

■ Wenzel maintains, relying on Ind. Code § 24–4.6–1–101, the trial court erred when it declined to grant his request for post-judgment interest "on the award of the fair value of his shares." (Appellant's Br. at 17.)

H & G asserts three reasons the trial court did not abuse its discretion in declining to award Wenzel post-judgment interest. However, because an award of post-judgment interest is discretionary under Ind.Code § 23–1.5–3–3, we need not address either party's contentions.

■ When we interpret a statute, words and phrases are to be given their common and ordinary meaning. *Crowley v. Crowley,* 588 N.E.2d 576, 578 (Ind.Ct. App.1992). If the language of a statute is clear and unambiguous it is not subject to judicial interpretation. *Avco Financial Services v. Metro Holding,* 563 N.E.2d 1323, 1328 (Ind.Ct.App.1990).

Ind.Code § 23–1.5–3–3 addresses the transfer or purchase of shares of stock from disqualified persons. That provision states in pertinent part:

(a) Whenever:

\* \* \* \* \* \*

(2) a shareholder of a professional corporation becomes a disqualified person;

the shares of the deceased shareholder or disqualified person may be transferred to a qualified person.

\* \* \* \* \* \*

(e) In a stock valuation proceeding under subsection (d), the disqualified person is entitled to judgment against the corporation for the amount of the fair value of his shares as of the date of death, disqualification, or transfer, upon surrender to the corporation of the certificate or certificates representing the shares. The court may order that the judgment be paid by the corporation in such installments as the court determines to be fair and just. The judgment *may include an allowance for interest,* not to exceed the legal rate of interest for judgments specified in IC 24–4.6–1–101,[1] from the date of death, disqualification, or transfer.

(Emphasis supplied) (footnote added).

The use of the permissive "may" in Ind.Code § 23–1.5–3–3 indicates a trial court is not required to act, but may do so within its discretion. *See In re Visitation of C.H.,* 792 N.E.2d 608, 609 (Ind.Ct. App.2003) (the permissive "may" in a statute clearly indicates a trial court is

not required to grant visitation rights to grandparents, but may do so within its discretion). Ind.Code § 23–1.5–3–3(e)'s provision that a judgment "may" include an allowance for interest indicates the discretionary nature of an award of interest for a disqualified person. We cannot interpret the plain language to require the trial court to grant post-judgment interest. *See Wenzel II,* 779 N.E.2d at 44 ("An award of prejudgment interest is generally not considered a matter of discretion.... Ind.Code § 23–1.5–3–3(e) differs from the common law, however, in that it grants the trial court discretion to determine whether such an award is appropriate.") Rather the statute permits a trial court to award interest, but not more than the 8% rate of interest for judgments specified in Ind.Code § 24–4.6–1–1.1.

### 3. *Delivery of Shares*

■ Wenzel claims the trial court erred when it required him to deliver his shares of stock in H & G prior to receiving payment. Wenzel's entire argument on this issue is:

Finally, the trial court erred as a matter of law when it ordered [H & G] to pay Wenzel the value of his shares only upon "delivery" of those shares "or an instrument effecting and unequivocally evidencing Wenzel's surrender of his shares." There is no evidence whatsoever that physical shares of stock were issued to Wenzel or that Wenzel is in possession of any physical shares. In-

---

**1.** Ind.Code § 24–4.6–1–101 states:

Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at:

(1) the rate agreed upon in the original contract sued upon, which shall not exceed an annual rate of eight percent (8%) even though a higher rate of interest may properly have been charged according to the contract prior to judgment; or

(2) an annual rate of eight percent (8%) if there was no contract by the parties.

deed, Wenzel has been a disqualified shareholder in [H & G] for almost nine (9) years and thus by statute can no longer hold an active interest in [H & G's] business. *See* I.C. § 23–1.5–3–1 and Ind. Admission and Discipline Rule 27(c). The trial court's imposition of a condition precedent to the payment of the value of Wenzel's shares is contrary to law and unsupported by the evidence. (Appellant's Br. at 20.)

Wenzel has waived this issue by failing to make a cogent argument supported by legal authority. *See Hollowell v. State,* 707 N.E.2d 1014, 1025 (Ind.Ct. App.1999) (failure to present cogent argument constitutes waiver of issue for appellate review); Ind. Appellate Rule 46(A)(8)(a).

Waiver notwithstanding, we find no error. In its order the trial court stated in pertinent part:

The Court's Findings are revised to provide that the "fair value" of Wenzel's stock ... shall be payable by the Firm to Wenzel, only upon Wenzel's delivery to the Firm of his shares of stock in the Firm, or an instrument effecting and unequivocally evidencing Wenzel's surrender of his shares in the Firm to the Firm[.]

(App. at 180.) The trial court's requirement is supported by Ind.Code § 23–1.5–3–3(e), which provides: "[T]he disqualified person is entitled to judgment against the corporation for the amount of the fair value of his shares as of ... disqualification, ... upon surrender to the corporation of the certificate or certificates representing the shares...."

H & G notes that even if Wenzel does not possess stock certificates to surrender to H & G, he could surrender his stock to H & G by delivery of an assignment or other instrument thereby surrendering his shares as required by the trial court. We agree the trial court did not err when it ordered Wenzel to deliver an instrument effecting and unequivocally evidencing his surrender of the shares. Even if Wenzel does not currently possess a "certificate" representing any shares of stock he owns in H & G, a shareholder may prove ownership of shares by evidence other than the certificate. *See* 18A Am.Jur.2d, *Corporations* §§ 733, 738 (1985).

## CONCLUSION

To the extent the trial court's findings of fact and conclusions of law pertain to Wenzel's breach of fiduciary duty by soliciting NCB, the trial court did not abuse its discretion in awarding H & G $20,000.00 in damages. Nor did the trial court abuse its discretion in declining to award Wenzel post-judgment interest for the fair value of his shares or when it ordered Wenzel to deliver his shares of stock in H & G or an instrument effecting and unequivocally evidencing his surrender of the shares.

Affirmed.

BARNES, J., concurring in result.

DARDEN, J., concurring in part and dissenting in part with separate opinion.

DARDEN, Judge, concurring in part and dissenting in part.

I fully concur with the majority's resolution of the latter two issues; however, I respectfully dissent with its conclusion that the trial court did not abuse its discretion in awarding H & G $20,000 as damages for Wenzel's breach of his fiduciary duty to H & G.

In *Wenzell II,* the trial court found that between March 27 and June 30, 1995, Wenzel secretly contacted numerous clients of [H & G] for whom Wenzel was doing work, and solicited such clients to

leave [H & G] and to employ Wenzel's new firm, after his departure. 779 N.E.2d at 46. Thereafter, the trial court concluded that Wenzel "breached his fiduciary duties to [H & G] by actively soliciting clients to leave [H & G], and to transfer their files to him at his new firm, all while he was still a paid employee of [H & G]." *Id.* For Wenzel's "breaches of his fiduciary duties" to H & G, the trial court then awarded to H & G damages in the amount of $20,000. *Id.*

As the majority notes, we held to be erroneous "the trial court's determination that Wenzel had solicited numerous clients, in addition to NCB." Op. at 1002. We reached this conclusion because according to the evidence, Hopper and Galliher had approved a certain format for communication by Wenzel with existing clients to inform them that he would be leaving H & G. Further, the evidence did not reflect any departure from that format in Wenzel's communication with seventeen of those clients contacted by Wenzel; only with NCB, the eighteenth client, did the evidence show that Wenzel's communication exceeded the approved format.

Therefore, we affirmed the trial court's "findings of fact and conclusions of law [as] to Wenzel's breach of duty by secretly soliciting NCB." 779 N.E.2d at 48. However, we held that the trial court's findings of fact and conclusions of law were "clearly erroneous to the extent they appl[ied] to the alleged secret solicitation of other clients." *Id.* Thus, because we found the record to support only one instance of an inappropriate client solicitation rather than eighteen, we remanded "with instructions that the trial court *adjust* its damage award to an amount consistent with this opinion." *Id.* (emphasis added).

While we provided no specific guidance as to how the adjustment should be made, the trial court's award after remand re-flects no adjustment whatsoever. Therefore, I would find that the trial court abused its discretion when it proceeded after remand to award damages in the same amount for the single breach.