**Robin (Wenning) LAMB, Appellant (Petitioner Below),**

v.

**Larry N. WENNING, Appellee (Respondent Below).**

No. 31S01–9210–CV–756.

Supreme Court of Indiana.

Oct. 5, 1992.

Linda B. Lorch, Lorch & Naville, New Albany, for appellant.

Marcus Burgher, Corydon, for appellee.

**SHEPARD, Chief Justice.**

What standard applies to a request for a change in primary physical custody when divorced parents have joint legal custody of their child? We hold that a petition for change can be granted only upon "a showing of changed circumstances so substantial and continuous as to make the existing order unreasonable."

### Case History

As part of an agreement to settle on the dissolution of their marriage, Robin and Larry Wenning agreed that they would share joint legal custody of their son Jerry (then age six), that Robin would have primary physical custody, and that Larry would pay child support. The court approved this proposal and incorporated it into the decree, issued on January 5, 1990.

Eleven days later, Robin notified Larry and the court that she planned to move to a place outside Indiana and more than a hundred miles from her present county of residence, a notice required by Ind.Code Ann. § 31–1–11.5–21.1 (West Supp.1992). On January 23, 1990, Larry filed a petition to modify the dissolution decree, alleging a substantial change in circumstances. He requested that the court modify the decree so that Jerry would live with him, Robin to have reasonable visitation.

On March 7, 1990, Larry filed a petition for emergency custody alleging that Robin intended to remarry and move with Jerry to Missouri. Robin married Steve Lamb on March 7. The court held hearing on the emergency petition, and on March 9 the court ordered that temporary physical custody of Jerry be with Larry until the end of the spring school term and with Robin in Missouri until a week before the start of the fall school term. On August 7, 1990, the court held a hearing on Larry's petition to modify the dissolution decree. It heard testimony, received evidence, and interviewed Jerry in camera. It then ordered that joint legal custody continue but that Larry become the residential parent. Robin appealed.

The Court of Appeals reversed, finding that the trial court had erred by applying the standard applicable to an initial custody determination when it should have applied the standard for changes in custody. It also held that the change in circumstances

(i.e., Robin's move out of state) was insufficient as a matter of law to warrant modifying custody. *Lamb v. Wenning* (1991), Ind.App., 583 N.E.2d 745. We grant transfer.

### *"Best Interests" or "Unreasonable Order"?*

■ In an initial custody determination there is no presumption favoring either parent. Ind.Code Ann. § 31–1–11.5–21(a) (West Supp.1992). The court assumes that the parties are equally entitled to custody, but makes a decision based on which parent would better rear the child. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490, 492. Custody is determined according to the best interests of the child. Ind.Code Ann. § 31–1–11.5–21.

■ A more stringent standard governs requests for a change in custody. In subsequent hearings to modify custody the burden is on the petitioner to demonstrate that the existing custody order is unreasonable. This is because permanence and stability are considered best for the welfare and happiness of the child. *Adams v. Purtlebaugh* (1951), 230 Ind. 269, 102 N.E.2d 499. A trial court may modify a custody arrangement only upon "a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind.Code Ann. § 31–1–11.5–22(d) (West Supp.1991).[1] This is a codification of our case law, which requires a change in circumstances so decisive in nature as to make a change in custody necessary for the welfare of the child. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885.

■ These standards were developed in the context of the traditional custody arrangement in which one parent is awarded legal custody and the other receives visitation rights. Since these standards were adopted, a new custodial arrangement has joined the list of available options: joint legal custody. Ind.Code Ann. § 31–1–11.5–21(f). In a joint custody arrangement the parents share the "authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." *Id.* An award of joint legal custody does not necessarily involve an equal division of physical custody. *Id.* The issue presented today is what standard of proof should apply when there is a request to change the child's primary residence under a joint legal custody arrangement.

We conclude that the more stringent modification of custody standard should apply. The same concerns about stability and continuity present in sole custody modifications are present in the joint custody situation. One of the most significant elements of stability in a child's life is the child's primary caretaker—the person who cooks his meals, puts him to bed, and cares for him on a daily basis. It is certainly likely in joint custody arrangements that both parents are more involved in rearing a child. Still, when a child lives primarily with one parent under joint custody, a modification which sends a child to live with the other parent may have the same effect, as far as the child is concerned, as a traditional change in custody. Therefore, we hold that where there is joint legal custody with one parent providing the child's primary residence, a court may modify that residence only upon a showing of changed circumstances so substantial and continuing as to make the original residential arrangement unreasonable.[2]

### *The Move Out of State*

■ Whether a move out of state by a parent with joint legal custody and primary physical custody will be sufficient to satisfy this standard depends on the facts. Although a move out of state is not *per se* a substantial change of circumstances such as to make that parent's continued custody unreasonable, *Poret,* 434 N.E.2d at 890,

---

1. This higher standard does not apply in proceedings to modify custody arising out of paternity actions. *In re Grissom* (1992), Ind., 587 N.E.2d 114.

2. We note that the Court of Appeals correctly so held in this case. *Lamb v. Wenning* (1991), Ind.App., 583 N.E.2d 745; *see also Lucht v. Lucht* (1990), Ind.App., 555 N.E.2d 833 (applying modification standard in joint custody case).

that does not mean that the circumstances inherent in such a move are always insufficient as a matter of law to warrant modifying custody. To determine that an existing custody order is "unreasonable," a trial court is not required to find that the present custodian is unfit or that the existing order is harmful to the welfare of the child. This determination may include all relevant factors, including changes in circumstances of both the custodial and non-custodial parents and the resulting and potential advantages and disadvantages to the child. The change in conditions must be judged in the context of the whole environment. *Id.* at 888.

A move far away will significantly impact the relationship between the child and the parent without physical custody and severely hamper active participation of such parent in the child's upbringing. This is particularly significant when joint custody is involved because the court's order of joint custody reflects a finding that participation by the parent without physical custody in the major decisions regarding the child's welfare is in the child's best interest. In addition, the idea that parents will live near each other is part of what makes joint custody feasible. As Judge Hoffman pointed out in his dissent, one of the factors the court must consider when deciding whether to award joint custody in the first place is, "whether the persons awarded joint custody live in close proximity to each other and plan to continue to do so." *Lamb*, 583 N.E.2d at 752 (Hoffman, J., dissenting) (quoting Ind.Code Ann. § 31-1-11.5-21(g) (West Supp.1992)).

It is the effect upon the child, however, that renders a change substantial or inconsequential. *Poret*, 434 N.E.2d at 888. The child's welfare, not that of the parents, should be the primary concern of the trial court. *Wible v. Wible* (1964), 245 Ind. 235, 196 N.E.2d 571. Moreover, "a change that might be regarded as slight or inconsequential in one case might be catastrophic in another." *Poret*, 434 N.E.2d at 888. For example, where a very young child or baby is involved, a move out of state may have little or no effect on the child. For an older child who has formed friendships, attends school, and participates in activities or sports, is involved in church, or enjoys the security of supportive relationships with nearby relatives or others in his community, a move out of state may have a much more significant effect. Whether the effect is of such a nature as to require a change in custody is a matter within the sound discretion of the trial court. *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, *supplemented*, 262 Ind. 403, 316 N.E.2d 828.

### Conclusion

The trial court's order in this case contains just a fragmentary reference suggesting it applied the change of custody standard outlined above. The court's oral declaration from the bench detracts from this suggestion rather than supports it. Unable to say with confidence which standard was applied, we remand to the trial court for evaluation of the evidence according to the change in custody standard, and for entry of adequate findings.

GIVAN, DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

When a "joint legal custody" is constructed, the parties "share authority and responsibility" for major decisions, and there need not be "an equal division of physical custody." I.C. 31-1-11.5-21(f). When a court leaves a true joint legal custody construct in place while modifying only the "division" of physical custody, such court regards the ability of those left in joint legal custody to "share authority and responsibility" as having remained suitably operative and intact. Where the joint legal custody construct remains viable, no special concern for the welfare of the subject child arises which would warrant application of the strict "change of custody" standard. Between persons in "joint legal custody" who remain ready, willing and able to render major decisions,

it should be sufficient for the evidence to rationally support the conclusion that a new proposed "division" will better serve the interests of the subject child than the existing one.