In re the PATERNITY OF Dale Zee WINKLER, Minor Child.

Linda Winkler, Appellant–Respondent,

v.

Gary Roberson, Appellee–Petitioner.

No. 71A05–9910–JV–464.

Court of Appeals of Indiana.

March 15, 2000.

Rochelle S. Cotter, South Bend, Indiana, Attorney for Appellant.

Andrea E. Halpin, South Bend, Indiana, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge

Appellant–Respondent Linda Winkler ("Mother") appeals the trial court's judgment in favor of Appellee–Petitioner Garry Roberson ("Father") in a paternity action involving the question of which parent should have the custody of Dale Zee Winkler ("Daisy"). We affirm.

Mother raises one issue for our review, which we restate as: whether the trial court abused its discretion in placing Daisy in Father's custody.

Daisy was born on May 28, 1987, and for the first two years of her life, Mother and Father, although not married, resided together in South Bend. When Daisy was approximately two years old, Daisy and Mother moved into a house which was two doors down from the house in which Father resided. When Daisy was approximately eight years old, Father married and moved with his wife to a home in nearby Mishawawka.

During the course of the ten years following her second birthday, Daisy resided with Mother. Father exercised a regular pattern of visitation with Daisy, including a significant number of days during summer vacation. Father also became involved in Daisy's school. Daisy grew very close to Father's step-son and two step-daughters during this time. She also grew close to various members of Father's family residing in the South Bend/Mishawawka area.

In April of 1999, Father learned that Mother intended to change Daisy's permanent residence to Virginia where Mother's husband had a job. Father filed a petition to establish paternity and custody. After a hearing on the petition, the trial court accepted the parties' stipulation of paternity and determined that Father should have custody of Daisy. Mother now appeals.

In response to Mother's timely request, the trial court made special findings of fact and conclusions of law. When a party has requested specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998). In addition, before affirming on a legal theory supported by the findings but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings. *Id.* In reviewing the judgment, we first must determine whether the evidence supports the findings and second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Medical Research*, 675 N.E.2d 704, 707 (Ind.Ct. App.1996), *trans. denied*. The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.* A judgment is clearly erroneous even though there is evidence to support it if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made. *Owensby v. Lepper*, 666 N.E.2d 1251, 1256 (Ind.Ct.App. 1996), *reh'g denied*.

Mother initially contends that the trial court erred in not choosing to apply the strict standard governing modification of custody. The trial court based its de-

termination on its belief that this case involved an initial custody determination. In an initial custody determination, there is no presumption for either Mother or Father, and the trial court's determination is based on the best interests of the child. *See Lamb v. Wenning*, 600 N.E.2d 96, 97 (Ind.1992).

■ A more stringent standard governs requests for modification of custody. *Id.* In hearings to modify custody, the burden is on the petitioner to demonstrate that the existing custody arrangement is unreasonable. *Id.* at 98. Thus, there must be a showing of a change in circumstances so decisive in nature as to make a change in custody necessary for the welfare of the child. *Id.*

■ A stricter rationale is required to support a change in custody because "permanence and stability are considered best for the welfare and happiness of the child." *Id.* As this court stated in *Kuiper v. Anderson*, 634 N.E.2d 556, 557–58 (Ind.Ct. App.1994), *reh'g denied*:

The policies behind the standard are to avoid the disruptive effect of moving children back and forth between divorced parents and to dissuade the former spouses from using custody proceedings as vehicles for revenge. In amplification our supreme court has long recognized that the welfare of the children is paramount and is promoted by affording them permanent residence rather than the insecurity and instability that follow changes in custody. In other words it has been our judgment and that of the legislature that children will normally prosper and mature, will learn to accept discipline and to set their own and respect others' boundaries under a standard of consistency better than they will otherwise, even though at any given point in time the noncustodial parent may appear capable of offering "better" surroundings, either emotional or physical. In the larger sense, the, stability in surroundings, schooling, relationships, authority figures, daily routine, econom-

ic circumstances, etc. constitute a substantial determinant in assessing the statutorily enumerated factors relevant to a determination of the best interests of the child. (Citations omitted).

The aforementioned standards "were [originally] developed in the context of the traditional custody arrangement in which one parent is awarded legal custody and the other receives visitation rights." *Lamb*, 600 N.E.2d at 98. In *Lamb*, however, our supreme court was asked to determine which standard should apply where there was a request to change the child's primary residence under a joint legal custody arrangement. The court ultimately determined that the stricter standard applied because "[t]he same concerns about stability and continuity present in sole custody modifications are present in the joint custody situation." *Id.* The court noted that "when a child lives primarily with one parent under joint custody, a modification which sends a child to live with the other parent may have the same effect, as far as the child is concerned, as a traditional change in custody." *Id.*

■ In determining which standard is appropriate in this paternity case, we must look to the relationship between the governing statutes and the unique facts of the case. Ind.Code § 31–14–13–1 provides that "[a] biological mother of a child born out of wedlock has sole legal custody of the child, unless a statute or court order provides otherwise...." Ind.Code § 31–14–13–2 provides that the court shall make an initial custody determination in a paternity case by looking at all relevant factors, including the factors listed in subsections (1) through (8) of the statute, to determine the best interests of the child. In doing so, the court is not to entertain a presumption favoring either parent. On the other hand, Ind.Code § 31–14–13–6 provides a stricter standard for modification of a child custody order in a paternity action. A trial court may modify an order only if the

petitioner establishes that modification is in the best interests of the child and that there is a "substantial change in one (1) or more of the factors that the court may consider under [Ind.Code § 31–14–13–2]. . . ."

Here, Mother had custody of Daisy pursuant to Ind.Code § 31–14–13–1 at the time Father filed his petition. Daisy had been in Mother's sole legal custody for the entire span of her twelve-year existence, and she had been living exclusively with Mother for the last ten of the twelve years of her life. Significantly, Father acquiesced to the custody arrangement for this long period of time. Although there was never any actual "initial custody determination" made in this case, the same concerns about stability and continuity present in sole and joint custody modifications are present. These concerns are perhaps best illustrated by Father's admission that Daisy has never spent more than three consecutive days at his home and that Mother was the primary caregiver. Accordingly, we follow our supreme court's reasoning in *Lamb,* and hold that, after a long acquiescence by a father in a paternity context, a trial court may not send a child to live with the other parent unless there is a showing pursuant to Ind. Code § 31–14–13–6.

We now decide the fact-sensitive question of whether Mother's move to Virginia had such an effect upon Daisy that a change of custody was warranted. "Although a move out of state is not *per se* a [substantial change] such as to make that parent's continued custody unreasonable, that does not mean that the circumstances inherent in such a move are always insufficient as a matter of law to warrant modifying custody." *Lamb,* 600 N.E.2d at 98–99. A change in conditions "must be judged in the context of the whole environment," and it is the "effect upon the child . . . that renders a change substantial or inconsequential." *Id.* at 99. Whether the effect is of such a nature as to require a change

in custody is a matter within the sound discretion of the trial court. *Id.*

Although the trial court labored under the false impression that it was to apply the lesser standard for an initial custody determination, it did make findings that are pertinent to a determination of whether Mother's move to Virginia had such a substantial effect upon Daisy that a change in custody was warranted. The court found that "[s]ince Daisy's birth, her Mother and Father have both been integrally involved in raising, training, nurturing, disciplining, and educating her." (Finding of Fact "L", R. 41). The court also found that Daisy had ongoing contacts and a relationship with Father's extended family, including his parents and various other relatives, "all of whom reside within reasonable driving distance of St. Joseph County, Indiana." (Finding of Fact "M", R. 41). The court further found that Daisy was at a time where she "would benefit from continuity and consistency in her life." (Finding of Fact "O", R. 41). In addition, the court found that Daisy had a "close and beneficial relationship with one of her step-sisters" living in St. Joseph County. (R. Finding of Fact "R(4)(c)", p. 42). Finally, the court found that Daisy "emphatically maintains that her residence should continue in St. Joseph County. . . ." (Finding of Fact "R"(3), p. 42).

In short, the findings support the conclusion that the move would deprive Daisy of consistent contact with her father, her step-sister, and significant extended family. The findings further support the conclusion that Daisy's need of permanence and stability is best met by her continued residence in St. Joseph County. While there is certainly evidence which could support an opposite conclusion, we hold that the aforementioned findings of fact are sufficient to support the change of custody mandated by the trial court. Accordingly, we affirm.

DARDEN, J., concur.

ROBB, J., concurs with opinion.

ROBB, Judge, concurs with opinion.

I concur separately because, although I completely agree with the opinion of the majority, I believe it is important to stress the holding of the case so that its use is not distorted. As the majority states, the mother had custody pursuant to Indiana Code section 31–14–13–1 by operation of law. Had a paternity petition been filed within a reasonable period thereafter, the court, again as provided by statute, would have been faced with an initial determination of custody between mother and father pursuant to Indiana Code section 31–14–13–2. However, only because of the very long acquiescence by the father in which he accepted the mother's custodial status do we apply the stricter standard as provided by Indiana Code section 31–14–13–6. It is clear from father's conduct that he acceded the fact that mother had custody, and the relationship of all of the parties proceeded on that basis. It is not necessary that we determine the length of the acquiescence by a father in order to invoke the stricter standard because that will vary by the facts and circumstances of each case. But, it is clear only upon evidence that father has accepted a custody arrangement with mother being the custodial parent that this occurs.