## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2019, 7:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Boyd A. Toler
Petersburg, Indiana

ATTORNEY FOR APPELLEE

Joseph L. Verkamp
Jasper, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Chad Burton,

*Appellant-Respondent,*

v.

Keesha (Burton) Richardville,

*Appellee-Petitioner.*

December 31, 2019

Court of Appeals Case No.
19A-DR-1482

Appeal from the Daviess Circuit Court

The Honorable Gregory A. Smith, Judge

Trial Court Cause No.
14C01-1002-DR-89

**Mathias, Judge.**

[1]     Chad Burton ("Father") appeals from an order of the Daviess Circuit Court denying his motion for modification of child custody and denying his motion to hold Keesha (Burton) Richardville ("Mother") in contempt. He raises several issues, which we consolidate and restate as:

I. Whether the trial court erred when it declined to modify physical custody; and

II. Whether the trial court abused its discretion in declining to find Mother in contempt of court.

[2] We affirm the denial of custody modification, reverse the trial court's decision on the issue of Mother's contempt, and remand with instructions.

## Facts and Procedural History

[3] Mother and Father have one minor child, M.B., who was born in May 2007. The parties' marriage was dissolved by decree in May 2010. The dissolution decree provided that Mother and Father would share joint legal custody of M.B., that Mother would have primary physical custody, and that Father would have standard parenting time. Father agreed to pay child support in the amount of $129 per week. Mother received the marital residence and agreed to accept the full responsibility for the mortgage on the residence. Appellant's App. pp. 14–23.

[4] Since the parties' divorce, Mother has been M.B.'s primary caregiver. The parties both reside in and M.B. attends school in Daviess County. Father's employment results in approximately $1,115 in pay per week, and Mother's employment results in approximately $748 in pay per week. Mother, a nurse, is occasionally subject to call-in during emergency situations. M.B., age twelve as of the date of the trial court's order in this case, is a good student and participates in various athletic activities. She has one stepsister and two half-sisters, all of whom are younger than M.B. Both Mother's and Father's

households have experienced changes in the years since their divorce. Mother remarried and gave birth to a second daughter with her husband. Divorce proceedings in Mother's second marriage were ongoing at the time of the hearing in this custody modification matter. Father also remarried; his wife has a daughter from a previous relationship who lives in the home with Father, and together, Father and his wife have one daughter.

On August 29, 2018, Father filed a Petition to Modify Child Custody and Support. His petition alleged that substantial change in the parties' circumstances necessitated a modification of custody. Appellant's App. p. 27. Father sought for the trial court to grant him primary physical custody of M.B., order Mother to pay child support, and for Mother to have standard parenting time. *Id.* at 28. Father subsequently filed a Verified Motion for Contempt on October 10, 2018, alleging that Mother had failed to make timely payments of the mortgage on their marital residence, in violation of the settlement agreement that was part of the trial court's dissolution decree. *Id.* at 29.

An evidentiary hearing was held on April 23, 2019, regarding both of Father's motions. Father alleged the following changed circumstances necessitated that the trial court grant his motion to modify custody: Father's wish to have primary physical custody of M.B.; M.B.'s changed relationship with Mother; M.B.'s wish to be in the primary physical custody of Father; M.B.'s age; M.B.'s health; and M.B.'s adjustment to home and school. Father also alleged that Mother had willfully refused to make mortgage payments, resulting in damage to his credit score, which he argued warranted the trial court finding Mother in

contempt. After hearing, the trial court interviewed M.B. in camera. On May 31, 2019, the trial court issued findings of fact and conclusions of law in its order denying Father's motion to modify custody and denying his motion for contempt. This appeal followed. Additional facts will be provided as needed.

## I.  Custody Modification

The general provision governing custody modification is found in Indiana Code section 31-17-2-21. Modifications are permitted only if the modification is in the best interests of the child and there has been a substantial change in one or more of the factors identified in Indiana Code section 31-17-2-8 ("Section 8"). Ind. Code § 31-17-2-21(a). The Section 8 factors relevant to the child's best interests are:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

(9) A designation in a power of attorney of:

(A) the child's parent; or

(B) a person found to be a de facto custodian of the child.

I.C. § 31-17-2-8.

[8] A parent who seeks modification of custody bears the burden of proving that the existing custody order should be altered. *Julie C.*, 924 N.E.2d at 1256 (citing *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). When evaluating whether a change to one or more Section 8 factors is a substantial change, the context of the whole environment must be judged, and "the effect on the child is what

renders a change substantial or inconsequential." *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1193 (Ind. Ct. App. 2014), *trans. denied*. The statutory requirement that a court find a substantial change in at least one factor, in addition to determining that modification is in the child's best interests, "signals that the policy of stability" should also guide a trial court's consideration of a petition to modify custody. *Joe v. Lebow*, 670 N.E.2d 9, 20 (Ind. Ct. App. 1996).

[9] Decisions by trial courts to modify child custody, parenting time, and child support are all reviewed for abuse of discretion. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). Where, as here, neither party requested findings of fact and conclusions thereon, our standard of review is as follows:

> When the trial court enters findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings.

*Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255 (Ind. Ct. App. 2010) (internal citations omitted).

[10] Here, the trial court concluded that there had been no substantial change in circumstances in any Section 8 factor. Appellant's App. pp. 11–12. As an initial

matter, Father contends that the trial court erred as a matter of law by relying on a "superseded legal standard." Appellant's Br. at 22. Father also argues that because the trial court erred in its factual findings, its conclusion of law was unsupported by the evidence. *Id.* We address each in turn.

*A. Whether the Trial Court Applied an Outdated Legal Standard*

[11] Father takes issue with the trial court's citation to *Lamb v. Wenning*, 600 N.E.2d 96 (Ind. 1992), which predates the legislature's 1994 amendment to the applicable custody modification law. Specifically, the trial court quoted from *Lamb* in reference to the standard it used in evaluating Father's petition to modify custody:

> 8. When considering a custody change a "more stringent standard" is required than for an initial custody determination because ["]permanence and stability are considered best for the welfare and happiness of the child." *Lamb v. Wenning*, 600 N.E.2d 96 (Ind. 1992).
>
> The parties were divorced in the year 2010 and for the past nine years [M.B.] has been in the custody of her Mother and [M.B.]'s best interest would best be served that such custody continue.

Appellant's App. p. 12.

[12] Father correctly points out that the 1994 amendment eliminated the prior, "very strict" requirement that a party who seeks custody modification must prove that the existing custody arrangement is made unreasonable by substantial changes

to the Section 8 factors. *See In re Marriage of Sutton*, 16 N.E.3d 481, n.5 (quoting *Joe*, 670 N.E.2d at 19).

[13]     We have previously explained the effect of the 1994 amendment to the custody modification law:

> . . . [T]he legislature has deleted or modified certain language which embodied the strict standard. Most notably, the statutory language requiring that the changed circumstances "make the existing custody order unreasonable" has been deleted. Further, the requirement that there be substantial *and continuing* changes in the "circumstances" has been modified, so that the court need now find only a "substantial change" in one or more of the factors which the court considers in determining the child's best interests. . . . We find from these rules strong support [] that the legislature deliberately lessened the [strict] standard for modification.
>
> However, a plain reading of the revised statute makes equally clear that the legislature has not simply adopted the "best interests" standard . . . applied at the time of the initial custody determination []. While the revised statute still requires the trial court to find that a modification in custody is in the child's best interests, it is also required to find a "substantial change" in one of the factors which are considered in determining the child's best interests.
>
> . . . [W]e note that the rule applicable to initial custody determinations that "there shall be no presumption favoring either parent" has not been incorporated into the modification context.

*Joe*, 670 N.E.2d at 19–20 (internal citations omitted).

[14]   Therefore, we agree with Father only to the extent that the trial court erred in citing to an outdated legal standard. However, we do not believe the trial court applied the more stringent standard to which petitioners were held before 1994, as in *Lamb*. Our review of the record indicates that the trial court properly considered whether Father had proven a substantial change in one or more Section 8 factors in addition to demonstrating that custody modification was in M.B.'s best interests overall, as is required under the current statutory scheme. Accordingly, we now review whether the trial court abused its discretion when it denied Father's petition for custody modification.

### B. Whether the Trial Court Abused its Discretion

[15]   Father argues that the trial court made several clear errors in its findings of fact and conclusions of law. And, Father argues, to the extent the trial court relied on erroneous findings to reach its decision, the court abused its discretion in denying his petition to modify custody. Appellant's Br. at 22. The trial court's conclusions regarding the presence of changed circumstances in the Section 8 factors that Father alleged are as follows:

> 2. There has been no substantial change in circumstances in this case in any of the factors identified in Ind. Code § 31-17-2-21. . . .
>
> 3. The Court gives the child's wishes consideration but does not assign controlling weight.
>
> 4. While there may be evidence that relationships the Child has with parents, siblings and others could be better or could be improved, the evidence does not demonstrate that there has been

a substantial change in circumstances that, coupled with the best interest of the Child, require a change in custody.

Appellant's App. pp. 11–12.

[16] The parties presented evidence concerning a number of the Section 8 factors, and the trial court made specific findings regarding Father's wishes, M.B.'s relationships with her siblings and peers, and M.B.'s wishes. Father explained at the hearing that although he did not seek physical custody of M.B. at the time of his dissolution of marriage to Mother, his wishes have changed since then. Specifically, Father now believes he should have custody of M.B. because Mother left M.B. unsupervised and tasked with caring for younger children on three or four occasions. Appellant's Br. at 22–24. Mother described two evenings on which M.B. and her sibling were home alone while Mother, a nurse, worked late. Tr. p. 129. Father described a third instance, on an afternoon when he picked up M.B., where no adult was present to supervise the other children, requiring Father to wait twenty-five to thirty minutes before an adult arrived. Tr. pp. 28–30. The trial court, however, found as fact that M.B. and her half sibling were "left alone one evening." Appellant's App. p. 11. This factual finding is clearly erroneous because Mother agreed that M.B. had been left alone on two occasions. Tr. p. 129. The error, however, is of little consequence when considered in the context of the court's other findings that supported its judgment. Therefore, this specific finding need not be set aside, despite its misstatement of one of the reasons why Father now wishes to have physical custody of M.B.

[17] Father also takes issue with the trial court's conclusion regarding M.B.'s adjustment to and relationships at home and school, specifically the court's conclusion that M.B. "has always seemingly had a good relationship with both parents; has a healthy relationship with her younger half sibling and fellow students in school and those in the community." Appellant's App. p. 12. Father points to conflicting evidence that M.B. has experienced bullying at school and that she feels jealous of attention given by her Mother to her younger half-sister. Tr. pp. 113, 126. Father presented evidence in the form of M.B.'s journal entries reflecting discord in her relationships with peers at school. Ex. Vol., Respondent's Ex. 2.

[18] The trial court's use of the superlative "always" is, of course, an overstatement in the sense that no relationship can be adequately described as *always* in one state or another. This descriptive error, however, does not indicate an abuse of discretion by the trial court, which could have heard Father's evidence of typical turmoil between an adolescent child and her peers, younger sibling, and parent, and nevertheless reasonably concluded in light of Mother's testimony that M.B.'s relationships are generally good and healthy. *See Kirk*, 770 N.E.2d at 307 ("[W]e are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence[.]")

[19] The last challenge to a specific finding by the trial court has to do with M.B.'s own wish, which Father contends is to live with him rather than with Mother.

Appellant's Br. at 27. The court, after conducting an in camera review with M.B., noted that it "gives the child's wishes consideration but does not assign controlling weight." Appellant's App. p. 12. This was well within the trial court's discretion for two reasons. First, because Indiana Code section 31-17-2-8(3) directs courts to give more consideration to children who are at least fourteen years old, and M.B. was eleven at the time of hearing. And second, because, again, the trial court is the better judge of the significance of witness testimony. M.B.'s wishes were considered with all the other relevant Section 8 factors in the context of whether custody modification is in her best interests, but her wishes are not dispositive of the issue.

[20] Father's appeal is also based on evidence he presented regarding several other Section 8 factors, about which the court did not issue specific findings. Those factors are M.B.'s health, M.B.'s relationship with her Mother, and M.B.'s age. At hearing, Father expressed concern for M.B.'s mental health and now argues that the court abused its discretion in not concluding that the evidence represented a substantial change in M.B.'s health. Appellant's Br. at 25. The court heard from Father and M.B.'s stepmother about changes in M.B.'s mood and her "up-and-down" feelings; Father attributes these changes to M.B.'s "current home life with Mother and [] issues at school." *Id.* Also, Father notes that M.B. has "concerns over her weight" that contribute to what he says is a substantial change in her health. *Id.* at 26. Father's concerns about M.B.'s health were not accompanied, however, by him taking a more active role in M.B.'s health care: Father did not participate in counseling with M.B. and did

not know the identity of her primary care physician. Tr. p. 79. The trial court could hear this evidence and reasonably conclude that Father's concerns about M.B.'s health do not amount to the substantial change required by statute before modifications to custody may be made.

[21]    Father also argues there has been substantial change in M.B.'s relationship with Mother, based on M.B.'s reports to Father that she is unhappy with the amount of attention she receives from mother and that Mother shows "favoritism" to M.B.'s younger half-sister. Appellant's Br. at 26. Mother testified that M.B. knows she is loved "unconditionally" at home, and that M.B. reciprocates her love for Mother. Appellee's Br. at 9–10. Again, we are confident that the trial court gave due consideration to M.B.'s wishes and considered Father's observations about the changing nature of M.B.'s relationship with her parents, and reasonably concluded that Father had not proved substantial change in the relationship that warranted modification of custody. The trial court noted there was evidence "that relationships [M.B.] has with parents, siblings and others could be better or could be improved." Appellant's App. p. 12.

[22]    Finally, Father points out that with age, M.B.'s interests and hobbies have changed, and that he is better suited than Mother to support M.B.'s interest in athletics. Appellant's Br. at 27. Once again, we are mindful that the trial court was in the best position to assess the facts and the credibility of the witnesses. For the trial court to conclude that evidence of M.B.'s interests changing with her growth does not equate to substantial change as contemplated by Indiana Code section 31-17-2-21 is not an abuse of the trial court's discretion.

[23] For all of these reasons, we conclude that the trial court's factual findings were not clearly erroneous and that the evidence did not demonstrate a substantial change in one or more Section 8 factors. Father's claims amount to a request for us to reweigh the evidence, which we will not do. Thus, the trial court's judgment on modification of custody was consistent with the evidence, and we affirm it.

## II. Contempt

[24] Father also argues that the trial court abused its discretion by declining to find Mother in contempt for failing to make mortgage payments on the marital home, as the parties' dissolution decree requires. Appellant's Br. at 18. A party that is willfully disobedient to a court's order may be held in contempt of court. *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005). "[C]ontempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind. 1994). We review the trial court's judgment under an abuse of discretion standard, it being "soundly within the discretion of the trial court to determine whether a party is in contempt[.]" *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012) (citation omitted). And, we limit our review to a consideration of the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. *Piercey v. Piercey*, 727 N.E.2d 26, 31 (Ind. Ct. App. 2000). "Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully." *Witt*, 964 N.E.2d at 202. Establishing the existence and knowledge of arrearage may not

amount to willful disregard of a court order, *Sutton v. Sutton*, 773 N.E.2d 289, 297 (Ind. Ct. App. 2002); however, the person alleged to be in contempt bears the burden of showing that the violation was not willful. *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000).

[25] The parties' dissolution decree requires the following of Mother in relation to mortgage payments:

> That Wife shall assume and be responsible for all expenses incidental to her ownership of [the former marital real estate] including, without limitation, the mortgage indebtedness owing to Region Bank, real estate taxes and insurance.
>
> * * *
>
> 16. That the parties stipulate as of this date (the date of this Agreement) that each party has the financial resources and potential earning ability to pay the indebtedness above allocated.

Appellant's App. pp. 18–20.

[26] Mother's monthly mortgage payment is approximately $660. Ex. Vol., Respondent's Exs. 17, 20. A Regions Bank mortgage statement addressed to the parties revealed that, as of December 17, 2018, past due payments totaled $1,966.81, plus other fees due including $128.20 in late charges and a $25.00 property inspection fee. Ex. Vol., Respondent's Ex. 17. As of April 17, 2019, past due payments totaled $1,327.26, plus other fees due including $230.76 in late charges and a $37.50 property inspection fee. Ex. Vol., Respondent's Ex. 20. Upon question by her counsel, Mother admitted that she had made late

payments. Tr. p. 123. Mother explained that being "tight on money" and "on your own without a supplemental income" contributed to the arrearage. Tr. pp. 123, 125. She denied deliberately refusing to obey the terms of the dissolution decree. Tr. p. 125. The remainder of her testimony pertaining to Father's contempt allegation was limited to how she intended to make timely payments in the future. Tr. pp. 123–25.

[27] On cross examination, Mother explained:

> Q: . . . Well, ma'am, it sounds like you're pretty much in a financial hole. So what's your plan for getting out of it so that you're caught up on this mortgage payment?
>
> A: Working extra. I have the ability to be able to take call and work extra, so I've been trying to do that to make more money to be able to pay my bills and –
>
> Q: Okay.
>
> A: – get them caught up.
>
> Q: How long have you had the ability to take extra work?
>
> A: How long have I?
>
> Q: Yes.
>
> A: Always.

Tr. pp. 131–32.

The court then engaged in a brief exchange with Mother:

> Q: Let me ask this. Keesha, do you agree that your – I think we have some documents that show [$]2,700. You think you're about [$]2,200 behind?
>
> A: Yeah. If the – including May, what's due –
>
> Q: Is the home [] listed for sale?
>
> A: No.
>
> Q: You going to try to sell it?
>
> A: No. I don't want to.
>
> Q: Well [] you understand the – your order from your decree is that you make the payments, and by not mak[ing] the payments, you're not just hurting [Father's] credit, you're dragging yours down too, right?
>
> A: Yes.
>
> Q: So refinance is probably going to be almost impossible to do. Your credit score's sinking too much, correct?
>
> A: Probably.
>
> Q: Have you tried that?
>
> A: No, I have not.

> Q: Have you tried to borrow any funds to catch it up from anyone else?
>
> A: My parents have helped me a little bit.

Tr. pp. 132–33.

[29] The trial court found that Mother's arrearage was due to her "financial situation in the current dissolution of her marriage." Appellant's App. p. 12. It went on to conclude that she had not willfully refused to abide by the court's order and was therefore not in contempt. Appellant's App. p. 13.

[30] Though our review for contempt matters is highly deferential, there must be evidence in the record before us from which the trial court could determine that alleged contemptuous conduct was not willful. *See, e.g., Steele-Giri v. Steele*, 51 N.E.3d 119, 129 (Ind. 2016) (affirming denial of contempt because father's conduct was not willful, as the record contained evidence of his state of mind; namely, that he lacked the knowledge that his actions violated an order of the court related to the parents' shared decision-making responsibility for child's education). Here, Mother's explanation of the arrearage—especially as to her state of mind—lacked the level of detail from which the trial court could conclude or even infer that Mother's actions were not willful. The trial court's denial of Father's motion to hold Mother in contempt was therefore an abuse of discretion. Thus, we reverse the denial to hold Mother in contempt and remand for proceedings not inconsistent with this opinion.

# Conclusion

We afford substantial deference to trial court judges in family law matters and note that "on appeal it is not enough that the evidence might support some other conclusion . . . it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk,* 770 N.E.2d at 307 (footnote omitted). Here, we conclude that there was ample evidence to support the trial court's determination that a custody modification was not required and was not in M.B.'s best interests. However, we conclude that there was insufficient evidence supporting the trial court's determination that Mother's noncompliance with an order of the court was not willful. Thus its denial of Father's motion to hold Mother in contempt was an abuse of discretion.

Affirmed in part, reversed in part, and remanded.

Robb, J., and Pyle, J., concur.